CITIZENS' NATIONAL BANK *v.* SMITH.          { Aug. 12, 1875.

55   593
68   221

*Promissory note—Signature obtained by means of fraudulent representa-tions—Negligence.*

The defendant was induced to sign his name, as maker, to a negotiable promissory note, by false and fraudulent representations that it was a contract of an entirely different character, whereby he would incur no pecuniary liability ; but it appeared further, that it was a negligent act on his part to sign the note without ascertaining whether it was what the payee represented, or something else. *Held,* that the defendant was precluded by his negligence from setting up the fraud, against a *bona fide* holder of the note who had purchased it for value before due.

This action was, at the September term, 1874, committed to a referee, who, at this term, reported the following facts :

This is an action of assumpsit upon a promissory note, of which the following is a copy : " Tilton, N. H., January 1st, 1872. Nine months after date, I promise to pay, to the order of R. M. Grems, one hundred and forty dollars, at my residence in Tilton, N. H., value received and int. Due Oct. 4, '72. LORENZO SMITH." On the back of said note is the following : "Without recourse. R. M. Grems." " Demand and notice waived. Leonard Gerrish." The plaintiffs purchased the note, a short time after its date, in good faith, without notice of any defect. The signature is genuine, but the note is wholly without consideration. The defendant did not contract to give any note, nor know or have any suspicion that it was a note he was signing, but was fraudulently induced by the payee to sign it under the pretence that it was an agreement to become agent of a patent hay-fork, and upon the representation by the payee that the defendant was to incur no pecuniary liability. It was a negligent act on the part of the defendant to sign the note without ascertaining whether it was what the payee represented, or something else. [At the request of the defendant, I add the following : The defendant is an old man, of limited education and poor eyesight, and is not in the habit of writing except to sign his name. To this, at the request of the plaintiffs, I add the following : His daughter, an intelligent woman, was present when the note was signed, and had an opportunity to read it.] A few days after the note fell due, the defendant, having learned that the plaintiffs had it, called at the bank and examined it, and gave notice to the cashier that he should not pay it. There was no proof that payment of the note was ever demanded at the defendant's house. The defendant's counsel, on the day after the hearing closed, took the position, in a letter to the referee, that the action cannot be maintained for want of a demand at the defendant's house. The referee ruled, *pro forma,* that the plaintiffs are entitled to recover, and finds that the defendant did promise, in manner and form

as the plaintiffs have declared, and assesses the damages in the sum of one hundred and forty dollars, and interest from January 1, 1872; but if the court shall be of opinion that upon the foregoing facts the plaintiffs are not entitled to recover, then the referee finds that the defendant did not promise in manner and form as the plaintiffs have declared.

The questions arising on the foregoing report were transferred to this court for determination by RAND, J.

*Pike & Blodgett*, for the defendant.

It appears from the case (1) that the defendant did not contract to give any note; (2) that he did not know or have any suspicion that it was a note he was signing; (3) that his signature was obtained by fraud, and under the pretence that it was an agreement to become agent for a patent hay-fork, and that he was to incur no pecuniary liability; (4) that the note is wholly without consideration; (5) that the defendant is an old man, of limited education and poor eyesight, and not in the habit of writing except to sign his name; and (6) that the plaintiffs are innocent holders for value before maturity.

I. The facts reported present an instrument in the form of a promissory note, but the substance is wholly wanting. There was no knowledge, no consideration, no consent, and no delivery on the part of the defendant. What he did was not through the free and *bona fide* exercise of his will, but through an outrageous and unmitigated fraud. Our position therefore is, that the instrument upon which the plaintiffs seek to recover is not legally or in fact the note of the defendant; that he is no more bound by it than if it were a total forgery, signature included; and that, in contemplation of law, it is but a blank piece of paper, to which no additional validity can be given, because it is in form negotiable or in the hands of an innocent holder for value before maturity. It is notorious that hundreds of similar instruments have been recently obtained in a like manner in this state by parties who have been driven from other states by the decisions of the court, and the questions arising in the present case are therefore of great importance. However it may have been formerly, the uniform current of the later decisions in this country is against the validity of such instruments, and the principles upon which such decisions are based may well be considered to be firmly established as sound rules of law, founded in reason. " The maker of a promissory note, whose signature is obtained without his consent or knowledge, will not be held on the note, even in the hands of an innocent holder for value before maturity." *Briggs* v. *Ewart*, 51 Mo. 245. The court say, in their opinion in this case (January term, 1873),—" It may well be assumed as an axiom too well settled to be disputed, that no one can be made a party to a contract without his own consent. Although his signature may be put to the writing and may have been written by himself, yet, if he did not know what he was signing, but acted honestly under the belief that he was signing some other paper and not the one he really signed, he ought not

to be bound by such signature. In the execution of instruments of writing, such as contracts, deeds, &c., the mind must act intelligently, and the instrument must not only be signed, but delivered by the party as and for what he intended it for. Commercial paper is no exception to this rule, only that in some cases a party, knowingly putting his name to such paper, may by his own negligence be estopped from disputing its execution as against an innocent holder for value.  *  *  The point is, that the mind must act in the execution of the paper. It must be executed as and for the paper it purports to be. If the mind is drawn away from it by fraud or otherwise, and the party is induced to sign it as and for another instrument from what it purports to be, then there is no consent given and no delivery made or authorized to be made of the paper so signed. If such paper purports to be a negotiable note, it is void as to the payee and all other holders, whether innocent purchasers or not "—*ib.* 249, 250. " The maker of a promissory note may defend against a *bona fide* holder for value, on the ground that when he' signed the note it was represented and he believed it to be a contract of an entirely different character. This class of cases forms an exception to the general rule regarding the liability of makers .of promissory notes to *bona fide* holders, and may be ranked with notes declared void by statute." *Whitney* v. *Snyder,* 2 Lans. (N. Y.) 477. "A promissory note, incorporated by a patent right vendor into a pretended contract for an agency to sell certain machines, the signer not being able to read writing with facility—held, in an action by an innocent holder, to be invalid through fraud." *Puffer* v. *Smith,* 57 Ill. 527. This decision is founded upon *Taylor* v. *Atkinson,* 54 Ill. 196, decided June term, 1870. " The delivery of a promissory note by the maker is necessary to a valid inception of the contract. The possession of a promissory note by the payee or indorsee is *prima facie* evidence of a delivery. But if it were put in circulation by force or fraud without fault on the part of the maker, there can be no recovery upon it, even in the hands of an innocent holder." *Burson* v. *Huntington,* 21 Mich. 416. "When the defendant unwittingly signs an instrument in the form of a negotiable promissory note, relying upon false representations, made to him at the time, that the instrument he is signing is a mere duplicate of a contract just previously signed by him, making him the agent for the sale of a patent hay-fork, under circumstances devoid of negligence on his part,  *  *  and he delivers the same in ignorance of its true character, believing it to be the mere duplicate contract which he supposed he had signed, such instrument is to be regarded as a forgery, and cannot be enforced in the hands of a *bona fide* purchaser. The maxim, that when one of two innocent persons must suffer by the acts of a third, the loss must be borne by the person who enables such third person to occasion it, does not apply to such a case. This maxim supposes the action of the person upon whom it imposes the loss to have proceeded from intelligence, and not to have been the result of duress. It presumes the assent of the will of the actor. If from any cause the assent of the will is wanting, the result is the same as if the act were

done under duress, or by an insane man." *Gibbs* v. *Linabury*, 22 Mich. 479;—see, also, *Aude* v. *Dixon*, 6 Exch. 869. The same doctrine is also held in *Walker* v. *Ebert*, 29 Wis. On page 197 of the opinion, DIXON, C. J., says,—"The inquiry goes back of all questions of negotiability, or of the transfer of the supposed paper to a purchaser for value, before maturity and without notice. It challenges the origin or existence of the paper itself; and the proposition is, to show that it is not, in law or in fact, what it purports to be, namely, the promissory note of the maker. For the purpose of setting on foot or pursuing this inquiry, it is immaterial that the supposed instrument is negotiable in form, or that it may have passed to the hands of a *bona fide* holder for value. Negotiability in such cases presupposes the existence of the instrument as having been made by the party whose name is subscribed; for, until it has been so made and has such actual legal existence, it is absurd to talk about a negotiation or transfer, or *bona fide* holder of it, within the meaning of the law merchant. That which in contemplation of law never existed as a negotiable instrument, cannot be held to be such; and to say that it is and has the qualities of negotiability because it assumes the form of that kind of paper, and thus to shut out all inquiry into its existence, or whether it is really and truly what it purports to be, is *petitio principii* — begging the question altogether." So, also, in *Kellogg* v. *Steiner*, 29 Wis. 626, is is held that "where one is induced by fraud, and without laches on his part, to sign a negotiable note supposing it to be a non-negotiable instrument, such note is invalid, even in the hands of an innocent third party." To the same effect is *Chapman* v. *Rose*, 44 How. (N. Y.) 364. *Cline* v. *Guthrie*, 42 Ind. 227, was another hay-fork agency swindle. The head notes are,—"Where the maker of a promissory note, payable at a bank in this state, was induced by the fraud and circumvention of the payee to sign his name to such note, when he honestly supposed and believed that he was writing his name on a blank piece of paper to enable the payee to see how his name was spelled or·written, and the maker did not, after he discovered that he had so signed his name to the note, voluntarily deliver it to the payee, but it was taken possession of wrongfully and forcibly by the payee, and by him carried away against the consent of the maker and negotiated — held, that the maker was no more bound by his signature than if it were a total forgery, although the person to whom it was negotiated was a purchaser and holder in good faith and for a valuable consideration before maturity;—held, also, that, admitting that the maker signed his name to the note with full knowldge of its character, it was nevertheless invalid and void, even in the hands of an innocent purchaser for value, for the want of delivery; nor was the maker liable on the ground that when one of two innocent persons must suffer by the act of a third, he who has enabled such third person to occasion the loss must sustain it." *Detwiller* v. *Bush*, 44 Ind. 70, decided the same year (1873), was as follows: "Complaint upon a promissory note, payable at a bank in this state, and indorsed by the payee to plaintiff before maturity. Answer,—that there was no agree-

ment or contract between the defendant and the payee by which a note was to be made; that no note was shown or read to the defendant, but alleging that there was a contract about other matters which was signed by the defendant; and if the note in suit was contained in the paper signed, it was so disguised and concealed that the defendant could not with reasonable diligence have discovered the same; that he never gave the note, and if his signature to it is genuine, it was obtained without his knowledge or consent, by fraudulent means to him unknown, &c. Held, that the answer was good on demurrer." "Forgery may be committed by deceitfully and fraudulently obtaining the signature of a party to an instrument which he has no intention of signing." *Clay* v. *Schwab*, 1 Mich. (N. P.) 168 (U. S. D. 1871, Vol. II). "Where a person writes his name on a blank piece of paper, to be used for the purpose of identifying his signature, and the person to whom it is given, without the knowledge of the other, writes over such signature a promissory note, which is negotiated before maturity to an innocent holder, it will be held that the instrument is a forgery, and the holder not entitled to recover." *Caulkins* v. *Whisler*, 29 Iowa 495;—see, also, *Nance* v. *Lary*, 5 Ala. (N. S.) 370. "Where the signature of the promissor was obtained by fraud, the note is void in the hands of an innocent holder." *Dunn* v. *Smith*, 12 Sm. & M. (Miss.) 602. "A total fraud in the consideration of a promissory note, or in the manner of obtaining it, will render the note void. *Shepherd* v. *Hall*, 1 Conn. 329.

II. But the referee finds that it was a negligent act on the part of the defendant in not ascertaining what he was signing. Some of the cases apparently make this finding material, and if it is, we ask the court to revise it. The right to do this will hardly be questioned,—first, because negligence is a mixed question of law and fact, and where the facts have first been ascertained, whether they constitute negligence or not, is a matter of law (1 Hill. on Torts 132, and cases cited); and second, because the power of revision is expressly conferred by section thirteen of the act under which the referee was appointed. We contend that the conclusion of the referee is both unfounded and unjust. Practically, it holds the defendant to the highest rule of diligence and prudence which could be required of anybody; for no one, with the utmost care and the greatest capacity and business ability, could under the circumstances have done more than to ascertain what he was signing. To hold the defendant up to such a rule is contrary to the instinctive sense of reason and justice, and has no foundation in law or equity. Negligence is from its nature a relative term. What constitutes negligence in any given case depends upon the circumstances of that case.

*Barnard*, for the plaintiffs.

The case finds that the plaintiffs purchased the note in suit before its maturity, in good faith, without notice of any defect. The defendant claims that, as between him and the payee of the note, he was de-

frauded, and for this reason he denies his liability to pay the note. It seems to me the rights of the parties on this state of facts have been too long and too often settled, both by the courts of this and other states, to be seriously questioned. The doctrine of our own courts, from *Perkins* v. *Chellis*, 1 N. H. 254, which was an action of assumpsit for a note fraudulently obtained for a worthless patent right, to *Clark* v. *Whitaker*, 50 N. H. 474, when applied to facts as they appear in this case, is uniform. I think that, as stated in *Doe* v. *Burnham*, 31 N. H. 431, " a *bona fide* holder, for a valuable consideration, who became such before the dishonor of the note, takes it free from all defences between prior parties;"—see, also, *Clement* v. *Leverett*, 12 N. H. 317, where the sale of a bill of exchange amounted substantially to a larceny of the amount from the drawer. *Emerson* v. *Crocker*, 5 N. H. 159, and *Clark* v. *Pease*, 41 N. H. 414. In the last case this doctrine was fully discussed, and the same defence was urged by counsel, as in this case, that the whole essence of a contract was wanting between the original parties; as it was, there being no free exercise of the mind or will, the doctrine laid down in *Doe* v. *Burnham*, above stated, was again affirmed by the court, subject only to such exceptions as belong to general rules. The learned chief justice, after considering the exceptions, suggested the following as a safe guide to dealers in commercial paper: First, he must assure himself of the genuineness of the signature, or, if signed by an agent, that he was duly authorized; second, he must make such inquiries as to ascertain that the signer was not an infant or married woman, an alien enemy, an insane person, or some one who is always presumed by the law to be incompetent to contract; third, to inquire whether the signer of the note had been trusteed, or whether his claim would be affected by any other special statute. When he has satisfied himself on these points, if he learns of no other defect, and the signer is of sufficient ability, he may purchase. But suppose it should turn out that the note was obtained of the maker by fraud, or by duress, when the maker was in no fault: what rule shall then be applied? The long established one, that, when one of two innocent persons must suffer, the loss should fall upon him who has suffered a negotiable security with his name attached to it to get into circulation, and thereby mislead the indorsee. Such rules and such application of them are necessary to give security to negotiable paper. See authorities cited in *Clark* v. *Pease*, before cited, 423–425; 1 Pars. on Notes 279; *Sweetser* v. *French*, 2 Cush. 309, 313; *Gould* v. *Legee*, 5 Duer 260; *Powers* v. *Ball*, 27 Vt. 662; *Humphrey* v. *Clark*, 27 Conn. 381; *Griswold* v. *Davis*, 31 Vt. 390; *Putnam* v. *Sullivan*, 4 Mass. 45; *Tucker* v. *Morrill*, 1 Allen 528; 2 Pars. on Notes and Bills 42, also, sec. 3, ch. 9, on Lost Notes and Bills; Story on Promissory Notes, sec. 191; *Phelen* v. *Moss*, 67 Penn., cited in 11 Am. Law. Reg. 124. In this case, the right of the holder of a note, fraudulent as between the original parties, is discussed and authorities examined. The authorities cited by the defendant are from courts which seem to regard the equities of the defendant, in this class of cases, as embracing the first and controlling duty of the

court, apparently forgetting that, in the eye of the law, negotiable paper is the representative of money and is used in mercantile transactions as its substitute, and that any change from the well settled law, familiar alike to the courts and men of business, is little less serious in its results than a change in the currency of the country, and the laws affecting the same. The equities of the case are, however, by no means all on one side, for whenever there is a defendant who has been defrauded, there is a plaintiff who has honestly and in good faith, without notice, parted with an amount of money equal to the fraudulent claim; so that the rule of the law, after all, seems to rest in plain common sense, and it is only an admission that there are individual misfortunes which it does not attempt to remedy. Here the defendant was defrauded: for that the law should give him the fullest remedy against the wrong-doer: but why should he retrieve his misfortunes at the expense and damage of the plaintiffs, who have neither done nor been privy to doing wrong? The plaintiffs have misfortunes enough of their own. The paper they purchased was the property which they became the owner of, without the violation either of legal enactments or good morals. And why should the misfortunes of the defendant be turned over to the plaintiffs more than to any other innocent party, more especially in this case, when the defendant's misfortune arises from his own negligent acts?—for, if one by his negligence effects a transaction whereby an innocent party suffers, the negligent party must bear the loss. *Gaffard* v. *Hadden*, 67 Pa., *Zimmerman* v. *Rolfe*, 74 Pa.—cited in 14 Am. Law Reg. 193. This principle is recognized in most of the cases cited in the defendant's brief; also, in *Clark* v. *Whitaker*, 50 N. H. 474, and in a great variety of cases, many of which are cited in Shear. & Redf. on Neg., ch. 3, p. 227. As to the place of payment, undoubtedly, following the general rule, before the bank can recover upon the note, they must show a demand at the defendant's residence, or a sufficient excuse for not demanding payment there; but I say,—first, the exception was not properly taken, because nothing was claimed upon the point until after the hearing was closed and the case submitted and the parties had separated; and, secondly, this took place, not from any mistake or misapprehension on their part, but for the manifest reason that the defendant had called in at the bank, examined the note, and given notice to the cashier that he should not pay it. This ended all questions as to the necessity of any further demand. The reason for the demand no longer existed, and the law, therefore, did not impose the senseless and formal duty of again giving the defendant an opportunity to refuse to pay. *Stanley* v. *Stanley*, 2 N. H. 364; *Barker* v. *Barker*, 16 N. H. 333. If any revision of the referee's finding on the question of negligence is to be had, I wish to be heard on the evidence, which is abundant and conclusive to sustain the report, and mostly in written and printed instruments.

LADD, J. The question, whether one who has been induced by fraudulent representations, without negligence on his part, to sign a promissory

note or bill of exchange, supposing it to be a contract of an entirely different character, is liable on the note or bill to one who has purchased it in good faith for value, before due, has been considered within a few years in quite a number of the states; and the decisions seem to have been nearly uniform that he is not. Several of the cases holding this doctrine are referred to in the able brief furnished us by counsel for the defendant; and an examination of those cases shows, as it seems to me, that the doctrine stands on a very firm basis of reason and legal principle. The same question was decided in the same way by the English court of common pleas in 1869. *Foster* v. *Mackinnon*, Law Rep., 4 C. P. 704. That was an action by indorsee against indorser of a bill of exchange, of which the plaintiff became the holder before it became due, and without notice of any fraud. The defendant, who was a gentleman far advanced in years, was induced to put his name on the back of the bill by fraudulent representations, under the following circumstances: One Callow had been secretary to a company engaged in the formation of a railway, in which the defendant was interested, and the defendant had at some time previously, at Callow's request, signed a guaranty for 3,000*l.*, in order to enable the company to obtain an advance of money from their bankers. Callow took the bill in question to the defendant, and asked him to put his name on it, telling him it was a guaranty; whereupon the defendant, in the belief that he was signing a guaranty similar to that which he had before given (and out of which no liability had resulted to him), put his signature on the back of the bill as indorser. BOVILL, C. J., before whom the cause was tried at *nisi prius*, directed the jury that " if the defendant's signature to the document was obtained upon a fraudulent representation that it was a guaranty, and the defendant signed it without knowing it was a bill and under the belief that it was a guaranty, and if he was not guilty of any negligence in so signing the paper, he was entitled to the verdict. The full bench held that this was a proper direction. BYLES, J., who delivered the judgment of the court, in the course of his opinion (p. 711) says—" It seems plain, on principle and on authority, that if a blind man, or a man who cannot read, or who for some reason (not implying negligence) forbears to read, has a written contract falsely read over to him, the reader misreading to such a degree that the written contract is of a nature altogether different from the contract pretended to be read from the paper which the blind or illiterate man afterwards signs, then, at least, the signature so obtained is of no force. And it is invalid, not merely on the ground of fraud where fraud exists, but on the ground that the mind of the signer did not accompany the signature; in other words, that he never intended to sign, and, therefore, in contemplation of law, never did sign, the contract to which his name is appended."

I have seen but one case—*Douglass* v. *Matting*, 29 Iowa 49—where the rule has been directly held the other way; and I should be prepared to dispose of this case by the application of a doctrine which appears to be so sensible and so well sustained by authority, if the facts found

by the referee stopped here; but he found, in addition, that it was a negligent act on the part of the defendant to sign the note without ascertaining whether it was what the payee represented, or something else; and this, I think, puts a very different face upon the matter. That the defendant cannot be held by virtue of any actual contract or promise is very clear, because he never made any contract; but that he should be estopped by his own negligence from denying, as against an innocent holder for value, the usual legal effect of his signature to a negotiable instrument, or be discharged from liability for the proximate consequences to such innocent holder of his own negligent act, seems to be equally clear both upon reason and authority. See *Swan* v. *North British Co.*, 7 H. & N. 603, S. C. in error; 2 H. & C. 175, and cases referred to.*

But the defendant claims that the finding of negligence by the referee is wrong, and that his report ought to be revised in that particular by the court here. I do not think that can be done. The motion to recommit the report for the purpose of a further hearing on this point, or that the question of negligence be tried by jury, should be addressed to the circuit court. If the motion for a re-trial of the facts, either by the referee or a jury, should be denied in the circuit court, I am of opinion there must be judgment on the report for the plaintiff.

CUSHING, C. J.   The case of *Putnam* v. *Sullivan*, 4 Mass. 45, is very much like the present.   There the defendants, having occasion to be absent from home, had intrusted to their confidential clerk several blank papers with the name of the firm written upon them, to be filled up, some of them as notes signed by the firm, and others made payable to the firm, with the firm's indorsement upon them.   One of these blanks was intended to be given to the promissor on the note in suit, but he by a fraudulent trick induced the clerk to give him more than one of these papers, and this note had been fraudulently made on one of them.

It was conceded that the plaintiffs were *bona fide* indorsees for value without notice.   The case was ably argued, and judgment rendered for the defendants by PARSONS, C. J.   The learned judge, in his opinion, says,—" The counsel for the defendants agree, that, generally, an indorsement obtained by fraud shall hold the indorsers according to the terms of it; but they make a distinction between the cases where the indorser through fraudulent pretenses has been induced to indorse the note he is called on to pay, and where he never intended to indorse a note of that description, but a different note, and for a different purpose.

Perhaps there may be cases in which this distinction ought to prevail, —as, if a blind man had a note falsely and fraudulently read to him, and

---

* And see *Shirts* v. *Overjohn*, decided by the supreme court of Missouri, May term, 1875, and a valuable note thereon, in the Central Law Journal of July 2, 1875, pp. 423-426.

he indorsed it, supposing it to be the note read to him.   But we are satisfied that an indorser cannot avail himself of this distinction, but in cases where he is not chargeable with any laches or neglect, or misplaced confidence in others.   Here, one of two innocent parties must suffer.   *   *   The loss has been occasioned by the misplaced confidence of the indorsers *in a clerk too young or too inexperienced to guard against the arts of the promissor."*

In the present case, no fault is imputable to the plaintiff.   It clearly stands in the position of a *bona fide* indorsee for value without notice.

I have nothing to add to the citation above made, from the case of *Putnam* v. *Sullivan.*   Of two innocent parties, he by whose negligence the loss has been occasioned must bear it.

It is interesting to remark that the law, as held to-day by the English court in the case cited by my brother LADD, after the discussions of nearly three quarters of a century, stands exactly where the great American jurist left it.

SMITH, J.   In *Lickbarrow* v. *Mason,* 2 Term 70, ASHHURST, J., says,—"We may lay it down as a broad principle, that whenever one of two innocent persons must suffer by the acts of a third, he who has enabled such third person to occasion the loss must sustain it."   This rule is based in a sound legal principle, and commends itself to the good sense of every intelligent person.   It has been long established by numerous authorities,. both English and American, including several in this state, cited in the briefs of counsel.   It appears from the report of the referee that the plaintiff purchased the note in suit, before maturity, in good faith, and without notice of any defect.   It further appears from the report, that it was a negligent act on the part of the defendant to sign the note, without ascertaining whether it was what the payee represented it to be.   The defendant, then, having by his negligent act enabled another person to occasion a loss, he must sustain it.   Unless the circuit court, for cause shown, shall recommit the report, the plaintiff is entitled to

*Judgment on the report.*