JOHN KELLOGG *vs.* IVORY W. CURTIS.

Cumberland, 1874.—December 30, 1875.

*Promissory note—negligent signing of.*

The defendant, having voluntarily signed as maker a negotiable promissory note, supposing he was binding himself to some other contract, and relying on the representations of the payee as to the contents of the paper, without examining it sufficiently to ascertain the fact for himself, is estopped by his own negligence from setting up the invalidity of the note against a *bona fide* holder thereof.

Where there are no exigencies to be weighed, whether the admitted facts constitute negligence or not is a question of law and not of fact.

ON EXCEPTIONS from the superior court.

ASSUMPSIT on a promissory note of the tenor following: "Town of Bingham, county of Somerset, December 15, 1870. One year after date, I promise to pay to the order of J. S. Newcomb two hundred dollars, value received, with use at the Second National Bank at Skowhegan." Signed, "I. W. CURTIS," and indorsed, "J. S. NEWCOMB. For remittance to Agricultural National Bank, Pittsfield, Mass."

The defendant duly filed the following denial of signature: "I on oath say, that while the signature to the instrument produced as the one declared on appears to be my genuine signature, I never signed the note declared on knowing it to be a note, or having any reason to suppose it was a note."

This denial was ruled to be insufficient under the rule to require the plaintiff to prove the signature.

The plaintiff offered evidence tending to show that he was the *bona fide* holder of the note, for valuable consideration paid therefor before maturity, without notice of fraud in the making of the note, or of equities between the original parties thereto. The defendant offered evidence tending to show that the note was procured by the fraud of the payee, and that there was notice thereof to the plaintiff sufficient to put him upon inquiry before he purchased the note.

The following is the only testimony in regard to the manner in which the note was originally procured of the defendant by the payee.

The defendant testified: "I am a farmer; about December 15, 1870, Ira Brown drove into my door-yard and inquired 'the distance to Bingham; asked if I used a mowing machine; said he was around appointing agents to sell a patent sickle bar, as he called it; he drew out a model and put it in operation; I said I thought it was rather a good thing; he wanted me to accept the agency of the town; I declined; he insisted, and said, 'if you knew my proposals, perhaps you would take it;' they were to give the agent one-half of the profits, and the price to sell for was ten dollars a pair; after a while I consented but did not agree to take any certain amount; he sat in his carriage, wrote what he called a commission to sell and left it with me; he then asked questions as to my post-office address, the nearest express station, the nearest convenient bank, and kept writing as he questioned and received answers; and then said, 'I want you to come and sign your name.' Said I, 'you can do it just a well as I.' Said he, 'I rather you would write it to show that it is correct.' He handed me the book. It was dark, and I use glasses. I held the book on my knee, wrote my name, and handed the book to him. He did not get out of his carriage. He was to send me a bundle of the sickle bar and a model. I received nothing from him. Brown pretended to be acting for Mr. Newcomb."

The presiding justice who tried the cause without the intervention of a jury, adjudged as follows: "Upon the foregoing testimony, which is uncontradicted, I find as matter of fact, that the note in suit was procured of the defendant by the fraud of the payee, without knowledge on the part of the defendant of the character of the paper signed, and without negligence on the part of the defendant.

I. And without deciding the contradicted question of fact, whether the plaintiff is a *bona fide* holder for value without notice and before maturity, I rule *pro forma* as matter of law, that a note so procured without negligence on the part of the maker, is invalid even in the hands of an innocent third person who has obtained it in the manner claimed by the plaintiff.

II. The testimony of Curtis, the maker of the note, in regard

to the circumstances under which the note was given, was admitted subject to objection."

To the rulings in matters of law numbered one and two, the decision being for the defendant, the plaintiff excepted.

*G. W. Verrill*, for the plaintiff.

*J. H. Drummond*, for the defendant.

PETERS, J. The principal question in this case was substantially settled by the decision in *Abbott* v. *Rose*, 62 Maine, 194. It was there held, that a person who negligently signs and delivers to another a printed blank note, not knowing it to be such, but supposing it to be some other agreement, was liable thereon, if the blanks were afterwards wrongfully filled, and the note then transferred to a *bona fide* holder for value, without notice of the fraud. In this case, instead of an unfinished written promise, the paper executed by the defendant is a completed negotiable note. Although obtained from the defendant by circumvention and fraud, we think he is liable thereon to an innocent holder of the note. We are aware that there are many cases in the different states, where the tendency of the decisions may be the other way. The authorities are conflicting. But in consideration of the importance that attaches in a commercial community to a free and safe circulation of negotiable paper, and taking into account the temptations which impel men to resort to evasion and falsehood to avoid negotiable obligations given by them in speculations which result in loss and disaster, we are satisfied that our view of the law upon this question is most in accordance with the principles of justice and equity to all parties concerned. It is admitted, in all the cases where a different policy or doctrine is accepted, that a liability may exist, if there is any fault or negligence on the part of the maker of such note. In our opinion, the facts of this case clearly show a heedlessness by the defendant and want of care. We by no means mean to be understood as saying that a person may be holden in every case where his signature to a note has been surreptitiously obtained. Many cases might occur where the maker would be in no fault. But the de-

fendant signed a paper which he knew was to be effectual for some purpose by means of his name thereto, and was in fault for intrusting it with an adversely interested party, without knowing himself what it was. By this act he inflicts a loss upon an innocent party unless he bears the loss himself. We think he should bear the penalty of his own folly and mistake. *Caveat emptor* does not apply in such a case.

It is contended that the defendant is not liable, because the obtaining the note from him in the manner in which it was done, was an act of forgery, and not merely a fraud. In *Foster* v. *McKinnon*, 4 Law R., C. P., 704, much quoted in cases, it is said that the maker of such a note "never intended to sign, and therefore, in contemplation of law, never did sign the contract to which his name is appended ; . . . that his mind never went with the act." It might be forgery as far as the original parties to the note are concerned, or in a criminal prosecution of the offender, as virtually settled in *State* v. *Shurtleff*, 18 Maine, 368. But the answer to this objection is, that in a suit by an innocent holder, the maker is estopped by his own fault and negligence from setting up a defense of forgery. *Abbott* v. *Rose, supra. Van Duzer* v. *Howe*, 21 N. Y., 531. The principle is clearly and correctly enunciated in a late case in Missouri, not yet reported, thus: "Where it appears that the party sought to be charged intended to bind himself by some obligation in writing, and voluntarily signed his name to what he supposed to be the obligation he intended to execute, having full and unrestricted means of ascertaining the true character of such instrument before signing it, but neglecting to avail himself of such means of information, and relying on the representations of another as to the contents of the instrument, signed •and delivered a negotiable promissory note, instead of the instrument he intended to sign, he cannot be heard to impeach its validity in the hands of a *bona fide* holder." Am. L. Reg., Sept., 1875, 480. See also *Nebeker* v. *Cutsinger*,48 Ind., 14.

It is, however, further contended that the defendant is not liable, because the judge presiding found as matter of fact that the note was given by the defendant without negligence on his part. But it was an error on the part of the judge to make such finding.

What constitutes negligence in a case like this, where the facts are clear and unequivocal, is a question of law. The testimony of the defendant is uncontradicted. No fact is in doubt or dispute; no question about motive or intent to be judged of. There are no attendant circumstances or exigencies to be weighed or considered, affecting the rights of the parties. The whole evidence, with all possible inferences which can be legitimately based upon it, cannot exculpate the defendant from the negligence imputed to him. Therefore it was not competent for the judge to make the deduction upon the facts that he did make. The point was one of law, and not of fact; and wrongly decided. This conclusion is well sustained by the authorities. *Gilbert* v. *Woodbury,* 22 Maine, 246. *Davis* v. *Greene,* id., 254. *Todd* v. *Whitney,* 27 Maine, 480. *Sawyer* v. *Nichols,* 40 Maine, 212. *Lane* v. *O. C. & F. R. R. Co.,* 14 Gray, 143. *Gavett* v. *M. & L. R. Co.,* 16 Gray, 501. *Gahagan* v. *B. & L. R. Co.,* 1 Allen, 187.

*Exceptions sustained.*
*New trial granted.*

APPLETON, C. J., WALTON, DICKERSON, BARROWS and VIRGIN, JJ., concurred.