[No. 17878.  Department One.  September 18, 1923.]

ROSS MASON *et al., Respondents,* v. JOSEPHINE BURNETT, *Appellant.*[1]

BILLS AND NOTES (10, 13)—CONSIDERATION—FRAUD—EVIDENCE—
SUFFICIENCY.  A business woman of at least ordinary intelligence,
purchasing property, cannot be heard to say that she did not know
that she signed a promissory note for the balance of the price, where
she could read and write and had opportunity to read the note,
which was in strict accord with her contract for the land.

PRINCIPAL AND AGENT (56)—REPRESENTATIONS OF AGENT—LIABIL-
ITY OF PRINCIPAL.  One who, in buying property, sought the advice
of the selling agent, in whom she had confidence, as to matters in
which he did not represent the seller, makes him her own agent, so
that the seller would not be liable for any of the agent's representa-
tions in that regard.

Appeal from a judgment of the superior court for
Kittitas county, Holden, J., entered October 10, 1922,
upon the verdict of a jury rendered in favor of the
plaintiff by direction of the court, in an action on a
promissory note.  Affirmed.

*William M. Thompson* and *P. V. Davis,* for appel-
lant.

*D. V. Morthland* and *F. A. Kern,* for respondents.

BRIDGES, J.—The defendant has appealed from a
judgment based upon the verdict of the jury for the
plaintiff, which verdict was in accordance with the
direction of the court.

The facts are these:  The appellant was desirous of
purchasing a tract of farming land near Yakima.  She
solicited and obtained the aid of a Mr. Bird, of that
city, a real estate man.  He showed her various farms,
and, among the rest, that belonging to the respondents.
This she desired to purchase.  Mr. Bird asked the re-

[1]Reported in 218 Pac. 255.

spondents if they were willing to sell, and they gave him their terms—a certain amount of cash to be paid. down, certain additional amounts to be paid on a subsequent date, and the purchaser to assume a $14,500 mortgage then against the land. They agreed to pay Mr. Bird the usual commission. After some further negotiations between Mr. Bird and the respondents, exact terms were agreed upon as follows: the appellant was to pay down in cash $5,000; was to pay an additional $8,500 on or before December 31, 1920, and assume and agree to pay the mortgage above mentioned. In consummating the transaction the usual written contract was made and executed by both parties. This instrument expressly provides that the deferred payment of $8,500 "is evidenced by the negotiable promissory note of second parties (appellant), this day executed and delivered to first parties (respondents) bearing interest at 7% per annum, payable at maturity." At the same time, to wit, May 4, 1920, the appellant executed an ordinary printed form of promissory note, whereby she agreed to pay the respondents $8,500 on or before December 31, 1920, at seven per cent interest. After the execution of these papers, the appellant paid the holder of the mortgage certain sums thereon, and also paid certain sums on the balance of the purchase price. The note having come due according to its terms and being for the most part unpaid, the respondents brought this suit to secure a judgment in excess of $7,000.

The appellant's defense was that there was no consideration for the note and that she had been wrongfully induced to sign it. Her testimony showed that, before the consummation of the deal, she had told Mr. Bird that she would not give any notes and that she did not want to bind herself to purchase the land, but wanted to be in position to terminate the whole trans-

action by forfeiting any amounts which she may have paid on the purchase price or upon the mortgage. She further testified that she did not know that she had executed the note sued on, and that she did not know that the contract she signed obligated her to pay the balance of the purchase price. She claims that she did not read either the contract or the note, and she is not certain whether they were read to her. She does not claim that the respondents ever had any information that she did not want to give any promissory notes and that she wanted the contract to be in such form that she could terminate it by forfeiting what she had paid. She further testified that, at the time she executed the papers, Mr. Bird, in whom she had the utmost confidence and upon whose judgment she relied, told her that the meaning of the papers signed by her was that, if she failed to make the payments, she would lose the land and lose what money she had paid.

It appears that the appellant is a woman of some means; that she has had a fair amount of business experience; has at least ordinary intelligence and can read and write. The trial court refused to believe her testimony showed any defense to the action and directed a verdict against her.

We are satisfied that this ruling was right. Appellant says that she did not know she was signing a promissory note; yet, it was a very simple instrument and in printed form. She had ample opportunity to read it and know what it was about. If she did not read it, it was her own fault. It was in strict accord with the contract, and the whole transaction was exactly what respondents intended it should be, and the instruments correctly expressed the terms on which they had agreed to sell their lands. Under such circumstances the appellant cannot be heard to say that she did not know she was executing a simple promissory

note.  In addition to this, the contract which was executed expressly provided that appellant should pay a certain sum down and also the deferred payment represented by the note.  The latter was but additional evidence of an agreement to make the deferred payment.  If one may avoid the payment of an ordinary promissory note executed by him, simply because he testifies that he did not know he signed it, although it was before him and he could read and understand its terms, then our boasted security of contracts does not exist and one will never know when he has a negotiable instrument which he can enforce.

Appellant cites a great many cases, but nearly all of them are with reference to the reformation of instruments on the ground of mutual mistake, or for the rescission of contracts based on fraud.  Such cases are not in point here.

If it should be conceded that the appellant was misled or overreached, her testimony shows that it was the fault of her own agent and not that of respondents.  While Mr. Bird represented the respondents in the sale of their land and they agreed to and did pay him a certain commission, yet she had confidence in him and sought his advice on a matter concerning which he was not the agent for respondents—on matters collateral to the sale.  In so doing she made him her agent to that extent, and the respondents would not be liable to her for any representations that he may have made to her in that regard.

The judgment is affirmed.

MAIN, C. J., HOLCOMB, MITCHELL, and MACKINTOSH, JJ., concur.