68 N.J. Super. 62 (1961)
172 A.2d 10
BANCREDIT, INC., A CORPORATION OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
LYNN BETHEA AND TONY BETHEA, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Rehearing Argued May 2, 1961.
Decided June 2, 1961.
*64 Before Judges CONFORD, FREUND and KILKENNY.
Mr. John M. Blume argued the cause for plaintiff-respondent (Messrs. Blume & Blume, attorneys).
Mr. Joseph Butt argued the cause for defendants-appellants
The opinion of the court was delivered by FREUND, J.A.D.
This appeal from judgment entered in plaintiff's favor on a promissory note was originally resolved by us in favor of affirmance as to the adult maker of the note, Tony Bethea, and reversal and remand for factual determinations regarding the asserted defense of infancy of his co-maker, Lynn Bethea. Bancredit, Inc. v. Bethea, 65 N.J. Super. 538 (App. Div. 1961). The instant rehearing is limited solely to discussion of the issue of fraud in the factum, as it relates to the scope of Tony Bethea's knowledge of the nature of the instrument he was signing and his negligence in so inscribing it.
Defendant brings to our attention that portion of his testimony (65 N.J. Super., supra, at p. 544) in which he states that he "signed a paper to get $500 from Beneficial Loan." Bethea urges that the court misconceived the import of this testimony and mistakenly assumed that Bancredit and Beneficial Loan were one and the same concern. In fact, we are now told by his attorney, Bethea was not aware of the character of the instrument he signed, but rather thought he was signing an application for a loan in the amount of *65 $500 from Beneficial Finance Company, a separate and distinct organization from plaintiff. We are asked to characterize the latter form of deception as so essential to the making of the contract as to amount to fraud in the execution thereof.
We are satisfied, after review of the record as settled by the trial judge, R.R. 1:6-3, and consideration of the points raised in the briefs and at oral argument of the rehearing, that reasonable fact-finders could not differ as to Tony Bethea's knowledge that the instrument he was signing was a negotiable promissory note. Not only is there Bethea's own testimony that he "sign[ed] papers to borrow $500," and that he "[knew] I signed it for [a] loan"; there is also the undisputed proof that he and Lynn, shortly after they had affixed their signatures, were given a coupon book with a schedule of payments, from which they made three monthly payments before defaulting. It is thus incontrovertible that Bethea was aware of the general form of the obligation he had undertaken, at least insofar as it bound him to make monetary repayments at fixed intervals.
The question is raised, however, as to the possible legal effect, on the defense of fraud in the factum, of Bethea's alleged misunderstanding of the identity of the payee of the instrument (he believed it to be Beneficial Loan when it was in fact Chippy's, and, by express assignment, Bancredit), as well as his professed deception as to the amount of the note. This question recommends to us a re-examination of the pertinent principles shaping the defense of fraud in the factum, with particular attention to our statement in New Jersey Mortgage and Investment Co. v. Dorsey, 60 N.J. Super. 299, 302 (App. Div.), affirmed 33 N.J. 448 (1960), defining the defense as "such fraud in the procurement of the execution of a note or bill as results in the signer's being ignorant of the nature of the instrument he is signing." (Emphasis added). We will consider particularly, in light of our factual determination hereinabove, whether the maker's knowledge merely of the negotiable character of a note conclusively *66 establishes awareness of its "nature" and thus precludes assertion of fraud in the factum.
The defense of fraud in the factum presents in theory a somewhat confused intermingling of tort and contract principles. At the heart of the assertion of non est factum is the absence of that degree of mutual assent prerequisite to formation of a binding contract; absent the proverbial "meeting of the minds," one cannot be said to have obligated himself in law and the purported transaction is regarded as void. This is basic contract doctrine. New Jersey Mortgage and Investment Co. v. Dorsey, supra (60 N.J. Super., at pp. 303-304); C.I.T. Corp. v. Panac, 25 Cal.2d 547, 154 P.2d 710, 160 A.L.R. 1285 (Sup. Ct. 1944); 1 Williston, Contracts (3d ed. 1957), § 95A, p. 350; 5 Williston, Contracts (Rev. ed. 1937), § 1488, p. 4154; Restatement, Contracts (1932), § 475. See Note, 7 Rutgers L. Rev. 405, 409 (1952). Thus, where the signer of the instrument has been led to believe and does believe that he is signing something of a different character from the note he actually does inscribe, he has not in fact assented to the obligation represented by the paper.
Nevertheless, where the circumstances demonstrate the basic ingredient of voluntary, physical inscription, there has been at least an outward manifestation of assent on the part of the signer, thereby bringing into play  as against a holder in due course  additional considerations grounded in equity but phrased in terms of negligence. The signer must in such a situation exercise the caution of a reasonably prudent man to determine the character of the paper upon which he has purposefully placed his signature. The rationale of such a requirement may be found in the desirability of preserving general confidence in commercial paper, as well as in the equitable principle that where one of two innocent persons must suffer by the wrongful act of a third party, he who enabled the third party to perpetrate the wrong must sustain the loss. See Alexander v. Brogley, 63 N.J.L. 307, 308-309 (E. & A. 1899). In fact, not a few courts have *67 articulated the maker's negligence in terms of estoppel to assert the defense of fraud in the factum. Briggs v. Ewart, 51 Mo. 245 (Sup. Ct. 1873); Citizens' National Bank v. Smith, 55 N.H. 593 (Sup. Ct. 1875); Amato v. Fullington, 213 Or. 71, 322 P.2d 309, 315 (Sup. Ct. 1958).
Britton, in his landmark discussion, "Fraud in the Inception of Bills and Notes," 9 Cornell L.Q., 138, 153-55 (1924), attempted to reconcile the apparent conceptual dilemma of how an instrument void in its inception could subsequently be enforced according to its terms. He interpreted the "negligence" holdings to say merely that "proof that the signer was so situated that by the exercise of reasonable care he could have acquired this knowledge [of those facts essential to formation of a contract], shall have the same operative effect as his actual knowledge." He then suggested the following as a unifying resolution of this problem:
"The signer always possesses affirmative knowledge of some kind, even if it be nothing more than that he is conscious that he is signing his name. If, therefore, the cases in which the signer is held liable because of his negligence be critically examined with a view to discovering therein what mental elements were common in all cases, these new factors could be assembled in a statement which would assert that their existence operated as an indispensable condition precedent to the existence of the negotiable contract. Such knowledge would constitute an irreducible minimum. The negligence aspect would then disappear, but the cases would be decided just as they are now decided."
The cases on this subject have nonetheless continued to speak in terms of the basic knowledge of the signer and the reasonableness of his failure to obtain additional information as to the nature and terms of the paper obligation. See Annotation, "Deception as to Character of Paper Signed as Defense as Against Bona Fide Holder of Negotiable Paper," 160 A.L.R. 1295 (1946). See Uniform Commercial Code (1958), § 3-305, providing that:
"To the extent that a holder is a holder in due course he takes the instrument free from

* * * * * * * *
*68 (2) all defenses of any party to the instrument with whom the holder has not dealt except

* * * * * * * *
(c) such misrepresentation as has induced the party to sign the instrument with neither knowledge nor reasonable opportunity to obtain knowledge of its character or its essential terms; * * *"
The theoretical distinction is not entirely academic, viewing the question from a different angle. Considerations of negligence aside, one may only raise the defense of fraud in the factum if one has in fact been defrauded, and the answer to this question entails an inquiry into the precise manner and mode in which the maker was deceived  which in turn requires illumination of his actual knowledge at the time of signing.
Further, with respect to the question of negligence, it is clear that the standard of care imposed on the signer may vary in degree according to the extent of his actual awareness of the nature of the instrument he is in fact signing. As stated in National Exchange Bank of Auburn v. Veneman, 43 Hun 241, 245 (Sup. Ct. 1887), "The nature and character of the paper intended to be executed must always be considered in determining the question of the defendant's negligence." Thus, where the signer does not intend to evidence a legal obligation, he is under a lesser duty of care than where he does mean to undertake a legal duty of some kind; and where he fully intends to bind himself on a commercial promissory instrument, he is under a duty to exercise the highest degree of care. United States v. Tholen, 186 F. Supp. 346, 362-364 (D.C.N.D. Iowa 1960). See Britton, Bills and Notes (1943), § 130, p. 576; 1 Williston, supra, § 95A, pp. 351-52.
The view has been widely expressed that knowledge of the signer that he is inscribing a negotiable document will deprive him of a claim of ignorance of the "essential character" of the instrument and thereby of the defense of fraud in the factum, in spite of excusable deception as to certain of the contractual details. Cf. Fayette County Savings Bank v. *69 Steffes, 54 Iowa 214, 215, 6 N.W. 267 (Sup. Ct. 1880). See 8 Am. Jur., Bills and Notes, § 589, p. 295. We do not necessarily subscribe to this position and our previous statements, Bancredit, Inc. v. Bethea, supra (65 N.J. Super., at p. 544), uttered against the totality of the facts herein, should not be so construed.
The defense of fraud in the factum goes to the very substance of the contract, and the identity of the contractee, as well as the quantum of the obligation, is an essential component of the settled agreement. We would blind ourselves to commercial reality by denying that fraudulent identification of the obligee of an instrument, especially when considered in conjunction with alleged misrepresentations as to the amount of the obligation, could reasonably be interpreted as misstatement of an "essential term" of the document. See Uniform Commercial Code, supra, § 3-305 (2) (c), and especially comment 7, explaining the Code provision as an extension of the defense of fraud in the factum "to an instrument signed with knowledge that it is a negotiable instrument, but without knowledge of its essential terms." Cf. Asplund v. Marjohn Corp., 66 N.J. Super. 255, 267 (App. Div. 1961). Therefore, were we, solely for purposes of analysis, to separate the questions of knowledge and negligence, there would be some merit in the view that Tony Bethea's intent to sign a $500 note to Beneficial Loan did not, standing alone, sufficiently approximate the obligation, as actually written, as to preclude him as a matter of law from claiming fraud in the factum. See Stacy v. Ross, 27 Tex. 3 (Sup. Ct. 1863); Richardson v. Schirtz, 59 Ill. 313 (Sup. Ct. 1871); Griffiths v. Kellogg, 39 Wis. 290, 294 (Sup. Ct. 1876); Carbine v. Pringle, 90 Ill. 302 (Sup. Ct. 1878); Millard v. Barton, 13 R.I. 601 (Sup. Ct. 1882); Bowers v. Thomas, 62 Wis. 480, 22 N.W. 710 (Sup. Ct. 1885); Gate City Nat. Bank v. Bunton, 316 Mo. 1338, 296 S.W. 375 (Sup. Ct. 1927)
The fact of the matter is, however, that the elements of knowledge and negligence cannot feasibly be isolated in *70 determining the viability of the defense of non est factum under a given set of circumstances. And as stated infra, the fact that the signer knew he was inscribing a negotiable document places upon him an unusually high degree of care in ascertaining its operative details. It is the failure of the instant defendant to demonstrate proper exercise of that duty, under the circumstances of his signing and his own particular status, that compels us to reaffirm his liability on the note as a matter of law.
The imposition upon the maker of the burden of establishing freedom from negligence, as an essential ingredient of his defense of fraud in the factum, New Jersey Mortgage and Investment Co. v. Dorsey, supra (33 N.J., at pp. 450-451), comprises more than empty verbiage. It is an explicit direction to the signer of the instrument to come forward either with evidence that the physical circumstances of the signing and the representations made to him were so far removed from the realm of negotiable paper that he could not reasonably have foreseen or otherwise observed the subsequent effect of his signature, or to produce proof of legally mitigating circumstances in the form of his own physical or mental inability to comprehend the essence of the deception. Factors to be considered in mitigation may include physical disability (e.g., blindness), illiteracy, unfamiliarity with the English language, low general intelligence, unfamiliarity with commercial transactions, unavailability of interpretative aid, and misrepresentation by means of physical deception (e.g., substitution of papers by sleight of hand).
We have already mentioned the depth of defendant's understanding of the instrument in relation to its final character as negotiable paper. And while this may not, in itself, under the instant facts, defeat his right to have the jury consider his defense, when taken in conjunction with his failure to shoulder his burden of establishing freedom from negligence, he is clearly bound on the note to plaintiff. The record is devoid of proof of any mitigating circumstances. *71 On the contrary, we are faced with a situation in which the evidence is indisputable that Bethea was aware he was signing a negotiable instrument, and uncontradicted as to both his literacy and his knowing signature of the printed documents which, when later filled in as to payee and amount, constituted the note and conditional sales contract. These are all factors weighing so heavily against defendant's freedom from negligence, which it was his burden in the first instance to establish, that we are compelled to conclude, as a matter of law, that defendant has failed to sustain his defense.
Ordinarily, one who, though able to read, signs a negotiable instrument in reliance on false representations as to its character, is deemed negligent as a matter of law, thus precluding invocation of the defense of fraud in the factum; a fortiori, this would be so where, as here, the signer is aware of the negotiable quality of the note and is misled only as to certain of its details. New Jersey Mortgage and Investment Co. v. Dorsey, supra (60 N.J. Super., at p. 305); Zier v. Eastern Acceptance Corp., 61 A.2d 106, 108 (Mun. Ct. App. D.C. 1948). See Annotation, 160 A.L.R., supra, at pp. 1328-32. See 10 C.J.S. Bills and Notes § 499b, pp. 1100-1101. Of course, the existence of mitigating circumstances, other than illiteracy, may be introduced in the hope of raising a jury question. United States v. Castillo, 120 F. Supp. 522 (D.C.D.N.M. 1954). As determined infra, no such introduction was here attempted.
Considering the background of this transaction and defendant's admitted awareness that he was signing a promissory note, an inference of negligence is the only permissible one to be drawn. Compare Amato v. Fullington, supra [213 Or. 71, 322 P.2d 315], in which the maker, though a man of limited education, was able to read English, and, by his own testimony, knew the risk he ran in signing a plain printed form, yet signed it nevertheless  the court held that "[c]learly this was negligence"; United States v. Tholen, supra, holding that the ability of the makers to read and the opportunity to read before signing the instrument *72 imposed liability upon them as a matter of law; Gross v. Ohio Savings & Trust Co., 116 Ohio St. 230, 156 N.E. 205 (Sup. Ct. 1927), wherein the maker, having merely glanced over the instrument and failed to observe its true intent, was held negligent as a matter of law; Mitchell County State Bank v. Grennan, 116 Kan. 442, 227 P. 530 (Sup. Ct. 1924), holding that it is no defense against a holder in due course that the maker failed to read the note or relied on the representation of others as to its contents. Also see Chapman v. Rose, 56 N.Y. 137 (Ct. App. 1874); Glenn v. Porter, 49 Ind. 500 (Sup. Ct. 1875); First Nat. Bank v. Hall, 129 Mo. App. 286, 108 S.W. 633 (Ct. App. 1908); Kellogg v. Curtis, 65 Me. 59 (Sup. Jud. Ct. 1875); Mason v. Burnett, 126 Wash. 498, 218 P. 255 (Sup. Ct. 1923); Thompson v. C.I.T. Corporation, 157 S.W.2d 961 (Tex. Civ. App. 1941).
We are not unaware of the case law support for Britton's statement that the "ability of the signer to read tends very strongly to prove negligence but it does not always do so." Britton, Bills and Notes, supra, § 130, p. 579. However, most of the decisions holding that negligence is a jury question in spite of the maker's ability to read, also involved lack of knowledge on the signer's part that he was inscribing a negotiable instrument. Cf. Foster v. Mackinnon, L.R. 4 C.P. 704 (1869); Briggs v. Ewart, supra; Hall v. Box, 131 Miss. 218, 94 So. 221 (Sup. Ct. 1922); Bank of Holmes v. Thompson, 192 Iowa 1032, 185 N.W. 986 (Sup. Ct. 1922); Robertson v. Budzier, 229 Mich. 619, 201 N.W. 949 (Sup. Ct. 1925). The duty of care, i.e., the minimum standard of reasonable precaution, was thus of a lesser caliber than here.
Our statement in New Jersey Mortgage and Investment Co. v. Dorsey, supra (60 N.J. Super., at p. 304), that the question of negligence is one for the trier of fact, must be read in the context of the factual and procedural situation there involved and must here be considered in the light of the Supreme Court's subsequent exposition on burden of *73 proof. The factual contention of the defendants in Dorsey was that they had been led to believe that the note was a credit application and that they did not know they were signing a negotiable instrument. Furthermore, our holding in Dorsey was limited to recognition of fraud in the factum as a good defense to an action on a negotiable instrument by a holder in due course and consequent reversal of a judgment entered upon a stipulated settlement. In remanding for a new trial, we in no way intimated that the question of negligence was necessarily for the jury regardless of the status of the proofs. As with any other question involving due care, the jury is not entitled to consider the matter if men of ordinary reason and fairness could arrive at only one conclusion as to the prudence or negligence of the actor. Cf. Shellhammer v. Lehigh Valley Railroad Co., 14 N.J. 341, 345 (1954). This is such a situation.
The judgment affirming Tony Bethea's liability on the note stands reaffirmed.