No. 18,623.

JAMES ATKINSON *v.* ENGLEWOOD STATE BANK.
(348 P. [2d] 702)

Decided January 25, 1960.

Mr. WALTER F. SCHERER, for plaintiff in error.

Messrs. DAWSON, NAGEL, SHERMAN & HOWARD, Mr. RAYMOND J. TURNER, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE DOYLE.

PLAINTIFF in error seeks reversal of a district court judgment in the amount of $1093.41 based upon an action instituted by defendant in error on a promissory note. Plaintiff in error, who will be referred to here as defendant, was the maker of the note and defendant in error, Englewood State Bank, was named as payee therein and will be here referred to as plaintiff.

On September 14, 1956, one Jack Palmer called on defendant at the latter's home for the purpose of selling carpeting. He held himself out as a representative of Majestic Carpet Mills, the "regional office" of which was at 2500 South Osceola Street, Denver, Colorado. Palmer exhibited a sample of carpet to defendant (in connection with the sale) and also orally offered to pay defendant $50.00 if defendant would allow him to photograph the completed carpeting job (presumably for use by him in other sales). Palmer also agreed to pay defendant $25.00

for each sales lead which he furnished. On this occasion the parties signed a "contract" which memorialized the sale and their business association. This document was printed and contained a heading "Majestic Carpet Mills Contract" Regional Office 2500 South Osceola, Denver, Colorado. Included in it were stipulations which described the carpet and which also provided: "$25.00 on each sale to leads furnished. Permission to photograph granted. Total cash price $823.80, 36 monthly payments $28.03." There were other provisions which are not here important. In making the sale Palmer carefully demonstrated by use of the sample the high quality of the product.

The note on which suit was brought was signed in blank by defendant. Palmer represented that this document was a contract and indeed it was so labeled. However, from the very small print it emerges as a cognovit note and a chattel mortgage. Defendant testified that Palmer was to fill in the specific terms on a typewriter at home. The amount filled in was $1009.80, an amount which defendant claimed was unauthorized, and the name of the Englewood State Bank, which to this time had not been mentioned, was filled in as payee.

The plaintiff's officer was unable to state whether this particular note had been filled in when it was delivered to the bank, and testified that in 90% to 100% of such cases the note was filled in when plaintiff received it. Admittedly, however, the acknowledgment had not been taken with defendant personally present.

The evidence discloses that the carpet wore out and became valueless within a few months. Palmer had then departed. Majestic Carpet Mills appears to have been a temporary trade name which also evaporated quickly. The plaintiff had furnished the form notes to Palmer for buyer's signature and had checked defendant's credit when the sale was consummated and before defendant signed the note contract.

At the close of the evidence the trial court granted

plaintiff's motion for a directed verdict. It concluded that:

"* * * There has been no defense here, no proof of fraud, and I think the other point is good that the bank is a holder in due course and the defense of fraud is not available."

The points urged by defendant are:

I. "The trial court erred in holding that the Bank was a holder in due course and that the defense of fraud was neither proven nor available as a defense.

"Under the Colorado Negotiable Instruments Act, the Bank neither took the note in good faith or for value, and an original payee cannot be a 'holder in due course.'

II. "The trial court erred in holding that there was no proof of fraud."

## I.

The primary question and the one which is anterior to determination of whether plaintiff is a holder in due course is that of the legal sufficiency of the defendant's proof of fraud. The burden of establishing this affirmative defense was on defendant because "Every holder is deemed prima facie to be a holder in due course, but when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or some person under whom he claims acquired the title as a holder in due course. * * *" C.R.S. 1953, 95-1-59. The plaintiff here was entitled to the presumption of due course holding until defendant succeeded in showing a defense. If the defendant's showing of fraud was adequate the burden then shifted to plaintiff to *prove* that it was a holder in due course. 95-1-59, supra. *Johnson County Savings Bank v. Gregg,* 51 Colo. 358, 117 Pac. 1003.

The alleged false representations upon which the defense is predicated are: (1) That the carpet, which defendant contracted to buy, was equal in quality to the sample exhibited, (2) that defendant would receive a credit of $50.00 for agreeing to a photograph, and (3)

agreement by Palmer to pay $25.00 for each customer.

■ The theory of defendant that the representations that he was a partner in the enterprise; the deceptive trade name and sale contract, and the manner of obtaining his signature on the note-contract all add up to a swindling operation, finds support in the evidence and is sufficient in quality and quantity as against a holder *not* in due course. C.R.S. 1953, 95-1-55. The issue whether the contract and note were induced by fraud was therefore a question for the jury.

■ The contention that fraud in the execution (a real defense) is shown by the defendant's testimony that he signed the note believing that it was a contract is not sufficiently supported. As to this we fail to see justifiable reliance by defendant on the representation that the note was a contract — especially in view of the fact that defendant later received a copy of this document and failed to then act. Defendant knew that his signature created a legal obligation and he was duty bound to read the instrument. *Britton, Bills and Notes,* p. 583, Chap. 130, *Fraud.*

■ It is generally (there are some exceptions) negligence as a matter of law to sign without reading a document which creates a legal obligation where inability to read is not shown. Thus the trial court correctly refused to submit to the jury the issue of fraud as a real defense. *Britton,* supra. Though fraud as a *real* defense (that is, fraud which is effective even as to a holder in due course) is not here available to defendant, the misrepresentations as to the character of the instrument signed is available only if the plaintiff is not a holder in due course.

■ We conclude that there was sufficient evidence of fraud as an inducement to the execution of the instrument here so that the question whether plaintiff was a holder in due course was in issue. Defendant having proved at least a prima facie defense, the burden was on plaintiff to establish by a preponderance of the evi-

dence that it was a holder in due course.. C.R.S. '53, 95-1-52.

## II.

Sec. 52 of the Negotiable Instruments Law provides as follows:

*"Who is holder in due course.* — A holder in due course is a holder who has taken the instrument under the following conditions:

"(1) That it is complete and regular upon its face;

"(2) That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact;

"(3) That he took it in good faith and for value;

"(4) That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

■ We agree with defendant's contention that the value requirement of Sec. 52 (3) was not satisfied. It is undisputed that following receipt of the note from Palmer, plaintiff credited his account in the amount of $823.80. There is not the least suggestion, however, that Palmer was allowed to draw checks against the credit thus extended. Whether the mere crediting of a depositor's account, without more, constitutes the giving of value or whether an actual detriment must have been suffered has not been heretofore decided in this state. The rule appearing to be more just and reasonable is that which holds the mere extension of credit to be insufficient to constitute value. This is the view adopted by a great majority of courts in the United States.

"With few exceptions, the cases hold that a bank does not become a holder for value merely by giving credit * * * " *Britton,* supra, Sec. 97, p. 394.

The Negotiable Instrument Act is silent on the particular question but the Uniform Commercial Code, Sec. 3-303, adopts the view that the giving of credit without more is not the giving of value. *Bromfield v. Cochran,*

86 Colo. 486, 283 Pac. 45, is an analogous decision that supports this view.

█ Whether the instrument was complete and regular on its face as required by Sec. 52 (1) is also questionable. To establish this to the degree of probability, plaintiff's officer testified that in 90% to 100% of such cases the instruments are filled in when delivered. From this it cannot be said that the fact of regularity was indisputable.

## III.

Having concluded that the plaintiff failed to sustain the burden of proof that it was a holder in due course, we find it unnecessary to decide the question of whether plaintiff is precluded from being a holder in due course simply by reason of the fact that it is named as payee in the note. We refrain from determining this issue as well as the related issue of whether the plaintiff can by reason of its peculiar relationship to Palmer hold the status of a holder in due course in the circumstances before us, assuming that a payee can, under some circumstances, be a holder in due course. Cases on both sides of the issue are collected in *Brannan, Negotiable Instruments Law*, 545-550 (6th ed. 1938) and in *Britton*, supra, 327. See also 142 A.L.R. 489; *Aigler, Payees as Holders in Due Course*, 36 Yale L.J. 608 (1927).

## IV.

█ The bank contends finally that even if the evidence of fraud was sufficient to send the case to the jury on that issue, the defense is an equitable one which could properly be decided by the court without the aid of the jury and that its finding that there was no proof of fraud can be construed as a resolution by the court of the disputed factual issue in favor of the plaintiff. No authority is cited for this proposition, and we believe the contrary to be the law. Fraud in both the execution and the inducement was available as a defense in an action at law. *Enelow v. New York Life Ins. Co.*, 293 U.S. 379 (1935); 2 *Pomeroy, Equity Jurisprudence*, Sec. 914

(4th ed. 1918); 14 *American & English Encyclopedia of Law* 164 (2d ed. 1900); cf. *Lesser v. Porter,* 94 Colo. 348, 30 P. (2d) 318. Thus under Rule 38, R.C.P. Colo., the defendant was entitled to have this issue go to the jury.

We conclude, therefore, that the defense of fraud was one for the jury and that the trial court erred in not submitting it. The judgment is reversed and the cause remanded for further proceedings consistent with the views herein expressed.

MR. JUSTICE MOORE and MR. JUSTICE KNAUSS concurring.