## STANDARD FINANCE COMPANY, LIMITED, Plaintiff-Appellee, *v.* BETTY ELLIS, nka BETTY ORLANS, Defendant-Appellant

NO. 8287

(CIVIL NO. 61493)

JANUARY 13, 1983

BURNS, C.J., HEEN AND TANAKA, JJ.

OPINION OF THE COURT BY TANAKA, J.

In an action on a promissory note, defendant Betty Ellis, now known as Betty Orlans, appeals from the summary judgment in favor of plaintiff Standard Finance Company, Limited.

The only issue is whether the granting of summary judgment

was proper. We hold that it was and affirm.

The record shows that on September 30, 1976, defendant and her then husband W.G. Ellis (hereinafter "Ellis"), executed and delivered to plaintiff a promissory note in the amount of $2,800.

Nothing having been paid on the note, plaintiff filed a collection suit on May 15, 1980.[1] On January 15, 1981, the trial court entered its order granting plaintiff's motion for summary judgment. On March 9, 1981, judgment in the amount of $5,413.35 was filed. Defendant's timely appeal followed.

On appeal, defendant claims that plaintiff was not entitled to summary judgment because there were genuine issues of material fact as to (1) whether plaintiff was a holder in due course of the note; (2) whether misrepresentation induced defendant to sign the note; (3) whether duress was involved in obtaining defendant's signature; and (4) whether there was a lack or failure of consideration. We disagree.

The granting of summary judgment is proper where, from the entire record, it appears that there is no genuine issue as to any material fact and that the movant should prevail as a matter of law. Rule 56(c), Hawaii Rules of Civil Procedure (HRCP) (1981); *Hulsman v. Hemmeter Development Corp.*, 65 Haw. 58, 647 P.2d 713 (1982); *Anderson v. Oceanic Properties, Inc.*, 3 Haw. App. 350, 650 P.2d 612 (1982). The facts in the record and the inferences to be drawn therefrom are to be viewed in the light most favorable to the party opposing the motion. *Lau v. Bautista*, 61 Haw. 144, 598 P.2d 161 (1979); *Costa v. Able Distributors, Inc.*, 3 Haw. App. ___, 653 P.2d 101 (1982).

## I. HOLDER IN DUE COURSE

Hawaii Revised Statutes (HRS) § 490:3-302 (1976) (hereinafter "§ 3-302")[2] provides in part as follows:

> *Holder in due course.* (1) A holder in due course is a holder

---

[1] Ellis was not named a party defendant in the case. In her Memorandum in Opposition to Motion for Summary Judgment filed on December 16, 1980, defendant states that shortly after the execution and delivery of the note, Ellis "filed for and was declared a bankrupt (Bank. No. 77-00411, District of Hawaii)." (Record at 56.)

[2] Hawaii Revised Statutes ch. 490 (1976, as amended) is Hawaii's Uniform Commercial Code.

who takes the instrument
> (a) For value; and
> (b) In good faith; and
> (c) Without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person.
>
> (2) A payee may be a holder in due course.

Plaintiff contends that as a payee, it was a holder in due course under § 3-302, and that certain defenses of defendant were cut off by HRS § 490:3-305 (hereinafter "§ 3-305") which reads:

> *Rights of a holder in due course.* To the extent that a holder is a holder in due course he takes the instrument free from
>
> (1) All claims to it on the part of any person; and
>
> (2) All defenses of any party to the instrument with whom the holder has not dealt except
>
>> (a) Infancy, to the extent that it is a defense to a simple contract; and
>>
>> (b) Such other incapacity, or duress, or illegality of the transaction, as renders the obligation of the party a nullity; and
>>
>> (c) Such misrepresentation as has induced the party to sign the instrument with neither knowledge nor reasonable opportunity to obtain knowledge of its character or its essential terms; and
>>
>> (d) Discharge in insolvency proceedings; and
>>
>> (e) Any other discharge of which the holder has notice when he takes the instrument.

Defendant claims that plaintiff was not a holder in due course. She argues that there were genuine issues as to whether plaintiff took the note "for value" and "in good faith." Thus, summary judgment was improper.

The pivotal question is not whether plaintiff was or was not a § 3-302 holder in due course, but rather whether plaintiff had "dealt" with defendant and therefore took the note subject to the defenses mentioned above. Under § 3-305(2), a holder in due course[3] will not

---

[3] In situations where the payee is the holder, the courts' application of the Uniform Commercial Code (UCC) § 3-302 differs. Some cases hold that where the payee or his agent or intermediary deals directly with the maker of the commercial

take an instrument free from defenses of any party to the instrument with whom the holder has *dealt*.[4]

It is clear from the record[5] that plaintiff "dealt" with defendant. In his affidavit dated November 26, 1980, Ron Higa, vice president and manager of plaintiff, states *inter alia:*

3. On or about September 30, 1976, he was personally present at and witnessed the execution of the promissory note here in question, a copy of which note is attached hereto as Exhibit "A".

4. Prior to the execution of said note, affiant personally explained the terms and conditions of the note to Defendant Ellis and her then husband, W.G. Ellis [Record at 45.]

Therefore, even if plaintiff was a § 3-302 holder in due course, it took the note subject to any and all defenses available to defendant, because it had "dealt" with her.

On the other hand, if plaintiff was not a § 3-302 holder in due course, it took the note subject to "[a]ll defenses of any party which would be available in an action on a simple contract." HRS § 490:3-306(b).

The dispositive question, therefore, is whether a genuine issue of fact existed as to any of defendant's alleged defenses.

## II. MISREPRESENTATION

In Defendant's Answers to Second Set of Interrogatories filed on October 21, 1980, she indicates that "[s]hortly before" defendant executed the note, Ellis gave her "[c]onstant assurances" that her "signature was a formality and that he [Ellis] alone was liable and that

---

paper, the payee cannot be a holder in due course. Only a person "once removed" can be a payee-holder in due course. *See, e.g., Dobbs-Maynard Co., Inc. v. Jumper,* 388 So.2d 879 (Miss. 1980). Other cases deem such payee to be a holder in due course as long as he meets the requirements of UCC § 3-302. *See, e.g., Saale v. Interstate Steel Co., Inc.,* 27 A.D.2d 1, 275 N.Y.S.2d 532 (1966), *aff'd,* 19 N.Y.2d 933, 228 N.E.2d 397, 281 N.Y.S.2d 340 (1967). *See also,* J. White & R. Summers, *Handbook of the Law Under the Uniform Commercial Code* § 14-7 (1980); Note, *The Concept of Holder in Due Course in Article III of the Uniform Commercial Code,* 68 Colum. L. Rev. 1573 (1968).

[4] J. White & R. Summers, *supra* note 3, § 14-9.

[5] Defendant did not file any counter-affidavits, but relied on her answers to interrogatories in resisting plaintiff's motion for summary judgment. *See Ottensmeyer v. Baskin,* 2 Haw. App. 86, 625 P.2d 1069 (1981).

the debt would be repaid without any participation by her." (Record at 35.) Thereafter, defendant accompanied Ellis to plaintiff's office and executed the note.

Defendant argues that Ellis' misrepresentation induced her to sign the note and since such misrepresentation dealt with its essential terms, her execution of the note was not a manifestation of her assent. Consequently, the note was void *ab initio* and unenforceable as to her.

The principles of law as to when misrepresentation prevents the formation of a contract and when it makes a contract voidable are set forth in Restatement (Second) of Contracts §§ 163 and 164(1) (1981). Section 163 (hereinafter "§ 163") states:

§ 163. *When a Misrepresentation Prevents Formation of a Contract*
If a misrepresentation as to the character or essential terms of a proposed contract induces conduct that appears to be a manifestation of assent by one who neither knows nor has reasonable opportunity to know of the character or essential terms of the proposed contract, his conduct is not effective as a manifestation of assent.

Comment a to § 163 provides in part as follows:

This Section involves an application of that principle where a misrepresentation goes to what is sometimes called the "factum" or the "execution" rather than merely the "inducement." If, because of a misrepresentation as to the character or essential terms of a proposed contract, a party does not know or have reasonable opportunity to know of its character or essential terms, then he neither knows nor has reason to know that the other party may infer from his conduct that he assents to that contract. In such a case there is no effective manifestation of assent and no contract at all.

Section 164(1) (hereinafter "§ 164(1)" reads:

§ 164. *When a Misrepresentation Makes a Contract Voidable*
(1) If a party's manifestation of assent is induced by either a fraudulent or a material misrepresentation by the other party upon which the recipient is justified in relying, the contract is voidable by the recipient.

A.

Based on the facts in the record, we hold as a matter of law that

the misrepresentation by Ellis was not a § 163 "fraud in the factum" or "fraud in the execution" to render the note void at its inception.

A common illustration of "fraud in the factum" is that of the "maker who is tricked into signing a note in the belief that it is merely a receipt or some other document." Comment 7 to § 3-305. *Gonsalves v. Ikei,* 47 Haw. 145, 384 P.2d.300 (1963) is an example of that type of fraud. *See also, Atkinson v. Englewood State Bank,* 141 Colo. 436, 348 P.2d 702 (1960) (defendant was induced to sign a note in blank on the representation that it was a contract).

In the instant case, no representation was made to defendant that the note was anyting other than a note. In fact, as indicated above, it is uncontradicted that Ron Higa explained the "terms and conditions of the note" to defendant and Ellis prior to their execution of the note.

Comment 7 to § 3-305 further states that the defense of "fraud in the factum" is that of "excusable ignorance of the contents of the writing signed" and the party claiming such fraud "must also have had no reasonable opportunity to obtain knowledge." *Page v. Krekey,* 137 N.Y. 307, 33 N.E. 311 (1893), and *First National Bank of Odessa v. Fazzari,* 10 N.Y.2d 394, 179 N.E.2d 493, 223 N.Y.S.2d 483 (1961), both cited by defendant, are examples in this category of "fraud in the factum." In *Page,* an intoxicated, illiterate defendant, who could not read nor write, was induced to sign a guaranty on a false representation that it was an application for a license. In *Fazzari,* defendant who was unable to read or write English was induced to sign a note upon the misrepresentation that it was a statement of wages earned.

The record in this case fails to show any fact constituting "excusable ignorance" of the contents of the paper signed or "no reasonable opportunity to obtain knowledge" on the part of defendant. In fact, in his affidavit, Ron Higa states:

6. At no time prior to or contemporaneously with the execution of the note did Defendant Ellis state that she did not understand the terms and conditions of said note as explained to her by Affiant.

7. After affiant explained the terms and conditions of the note to Defendant Ellis, she made no request to read said note and was not prevented at anytime from reading said note. [Record at 46.]

Under the foregoing uncontradicted facts, the words of the court in *Bancredit, Inc. v. Bethea*, 68 N.J. Super. 62, 172 A.2d 10 (1961) are appropriate. There, the court stated:

The signer must in such a situation exercise the caution of a reasonable prudent man to determine the character of the paper upon which he has purposefully placed his signature. The rationale of such a requirement may be found in the desirability of preserving general confidence in commercial paper, as well as in the equitable principle that where one of two innocent persons must suffer by the wrongful act of a third party, he who enabled the third party to perpetrate the wrong must sustain the loss.

*Id.* at 66, 172 A.2d at 12.

### B.

As a matter of law, the facts in the record, viewed in the light most favorable to defendant, do not justify defendant's voiding of the note under § 164(1).

Plaintiff did not induce defendant by any misrepresentation. As set forth above, Ellis' misrepresentation to defendant occurred before they appeared at plaintiff's office to sign the note. Ron Higa says in his affidavit:

5. At no time prior to or contemporaneously with the execution of the note did Defendant Ellis inform affiant that she would not repay the note or that she was executing said note on the condition that only her ex-husband was to be solely liable for the repayment of said note. [Record at 46.]

### III. DURESS

In her answers to interrogatories, defendant states that she was "forced" to sign the note under duress. (Record at 13.) "[P]hysical beatings" of and "psychological pressure" on her by Ellis" [f]or at least the 3 yrs. prior to signing of note" constituted the duress. (Record at 33-34.) She argues that her execution of the note which was compelled by duress was not a manifestation of her assent. Thus, the note is void and unenforceable.

The law concerning duress resulting in void or voidable contracts is discussed in Restatement (Second) of Contracts §§ 174 and

175(1) (1981). Section 174 (hereinafter "§ 174") reads:

> § 174. *When Duress by Physical Compulsion Prevents Formation of a Contract*
>
> If conduct that appears to be a manifestation of assent by a party who does not intend to engage in that conduct is physically compelled by duress, the conduct is not effective as a manifestation of assent.

Comment a to § 174 provides in part:

> This Section involves an application of that principle to those relatively *rare situations in which actual physical force has been used* to compel a party to appear to assent to a contract. . . . The essence of this type of duress is that a party is compelled by physical force to do an act that he has no intention of doing. He is, it is sometimes said, "a mere mechanical instrument." The result is that there is no contract at all, or a "void contract" as distinguished from a voidable one. [Emphasis added.]

Section 175(1) (hereinafter "§ 175(1)") states:

> § 175. *When Duress by Threat Makes a Contract Voidable*
>
> (1) If a party's manifestation of assent is induced by an improper threat by the other party that leaves the victim no reasonable alternative, the contract is voidable by the victim.

### A.

We hold that as a matter of law the facts in the record do not constitute the type of duress which renders the note void under § 174. Such duress involves the use of actual physical force to compel a person to sign a document. It may include the example given in comment 6 to § 3-305 of an "instrument signed at the point of a gun" being void.

Here, the only evidence of duress is "physical beatings" and "psychological pressure" by Ellis on defendant over a course of three years prior to defendant's signing of the note. Without more, such evidence does not constitute § 174 duress resulting in the voiding of the note. From such evidence it cannot reasonably be inferred that the physical beatings by Ellis directly resulted in defendant signing the note in question.

B.

As a matter of law, based on the facts in the record, the note was not voidable by defendant under § 175(1).

Defendant relies heavily on *Furnish v. Commissioner of Internal Revenue,* 262 F.2d 727 (9th Cir. 1958). In *Furnish,* a wife had signed blank income tax forms at the request of her husband. The court of appeals reversed the judgment imposing a deficiency against the wife and remanded the case for a determination of duress stating that it is "harsly inequitable for the wife to be forced to pay a penalty for fraud arising out of nothing she had done, save signing a blank return required of her by a dominating husband." *Id.* at 733.

*Furnish* is distinguishable from this case. There duress was discussed in regards to its validity as a defense to a tax liability created by 26 U.S.C. § 51(b) (1939). Here, under the Uniform Commercial Code, comment 6 to § 3-305 states in part, "They [duress and illegality] are primarily a matter of local concern and local policy. All such matters are therefore left to the local law." Hawaii has adopted the Restatement's definition of duress that "where a party's manifestation of assent is induced by an improper threat that leaves him no reasonable alternative, the contract is voidable by that party." *Penn v. Transportation Lease Hawaii, Ltd.,* 2 Haw. App. 272, 275, 630 P.2d 646, 649 (1981).

Plaintiff did not threaten defendant. In his affidavit, Ron Higa makes the following uncontradicted statement:

8. At no time prior to or contemporaneously with the execution of said note did Defendant Ellis state or indicate in any manner that she was acting under coercion or duress in the execution of said note. [Record at 46.]

## IV. CONSIDERATION

Finally, defendant claims that the entire amount of the loan of $2,800 went to Ellis and she received no part of it. Thus, there was lack or failure of consideration and summary judgment was improper. We cannot agree.

Exhibit "B" attached to plaintiff's motion for summary judgment is a copy of plaintiff's check for $2,800 made payable to "W.G. Ellis and Betty Ellis." The reverse side of the check bears the endorse-

ment of "Betty Ellis." This was sufficient evidence of consideration for the transaction involved.

However, defendant states that she "[n]ever got the money or the use of it" and "[i]t all went to my ex-husband and this was understood by the Plaintiff." (Record at 24.) This fact does not constitute lack or failure of consideration. It is fundamental that consideration received by a co-maker on a note from the payee is sufficient consideration to bind the other co-maker. *Territorial Collectors v. Harrison*, 43 Haw. 98 (1959), *aff'd*, 278 F.2d 539 (9th Cir. 1960).

Thus, contrary to defendant's contention, no genuine issue of material fact existed. The facts and their inferences viewed in the light most favorable to defendant do not constitute valid defenses to the action, and summary judgment was properly granted.

Affirmed.

*Paul E. DiBianco* for defendant-appellant.

*Peter T. Kashiwa (Kashiwa, Iwai, Motooka & Goto,* of counsel) for plaintiff-appellee.