In re Harry D. GARRISON, Joe Allen Jeans, Debtors.

Albert HOFFMAN, Trustee, Plaintiff,

v.

HERITAGE SAVINGS AND LOAN ASSOCIATION and Shirley A. Pinkston, Defendants.

No. 84 M 0773.

United States District Court, D. Colorado.

April 18, 1985.

Bruce C. Bernstein, Denver, Colo., for plaintiff.

Shari L. Ulery, Denver, Colo., attorney for defendant, Heritage Sav. and Loan Ass'n.

John Pinkston, pro se.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER ON COMPLAINT TO VOID TRANSFER

JOHN F. McGRATH, Bankruptcy Judge.

The Plaintiff, Albert Hoffman, Trustee (Plaintiff), filed this Complaint against the Defendants, Heritage Savings and Loan Association (Heritage) and Shirley A. Pinkston (Pinkston) seeking to avoid a fraudulent transfer of property pursuant to 11 U.S.C. 548. Trial was held on March 25, 1985, at which time Heritage and the Plaintiff submitted a stipulation of facts and argued the merits of the case. Defendant Pinkston did not appear, but her husband, John S. Pinkston, appeared as her attorney-in-fact. Not being a licensed attorney, Mr. Pinkston was not allowed to represent Pinkston at trial.

The facts, as stipulated, are as follows:

1. Harry D. Garrison and Joe Allen Jeans (Debtors) owned certain real property located in Denver, Colorado. On April 12, 1977, they executed a Promissory Note to Megapolitan Mortgage Co. in the principal amount of $33,000.00. The Note was secured by a Deed of Trust on the above-referenced property. The Note and Deed of Trust were subsequently assigned to Heritage.

2. The Debtors defaulted on the Note, and a Public Trustee's Sale was held on December 6, 1983. The only bidder at the sale was Heritage, who bid the amount of its outstanding indebtedness, plus costs of sale, for a total of $34,599.13. The sale in all respects complied with Colorado law. The Public Trustee issued a Certificate of Purchase to Heritage reflecting its bid on the property and cancelled the Note and Deed of Trust.

3. On February 15, 1984, Heritage assigned the Certificate of Purchase to Pinkston. In consideration for the assignment, Pinkston paid Heritage the sum of $35,844.73, representing the bid amount together with interest thereon through February 15, 1984.

4. On February 24, 1984, Debtors filed separate petitions in bankruptcy. Under state law, the Debtors' redemption period would have expired February 27, 1984. By virtue of the bankruptcy filings, the redemption period was extended for 60 days beyond February 24th.

5. On May 29, 1984, Pinkston filed a Motion for Relief from Stay, seeking relief from stay so that Pinkston could apply for and receive a Trustee's Deed to the property.

6. On June 13, 1984, the Trustee advised counsel for Heritage, who at that time also represented Pinkston, that the Trustee intended to avoid the transfer made by the Public Trustee's Sale, under 11 U.S.C. 548.

7. On June 21, 1984, this Court entered an order granting Pinkston relief from stay. On or about June 29, 1984, the Public Trustee issued its Deed No. 3634 conveying the property to Pinkston.

8. On August 28, 1984, the Trustee filed a Complaint pursuant to 11 U.S.C. 548 seeking to avoid the alleged transfer of the property by the Public Trustee to Heritage, and seeking relief in the amount of the difference between the amount bid by Heritage at the sale and the fair market value of the property at the time of sale.

9. The fair market value of the property at the time of sale was between $85,000 and $100,000, with $85,000 representing liquidation value, and $100,000 representing value obtainable given an unlimited time to market the property, and taking into consideration the payment of all liens on the property at the time of the sale and the expenses of holding the property through the statutory redemption period.

At trial, Plaintiff and Heritage further stipulated that the Debtors were insolvent at the time of the sale. Mr. Pinkston informed the Court that title to the property had been subsequently placed in his and his wife's names jointly.

The issues remaining for this Court to resolve are:

1. Whether the foreclosure sale constituted a transfer of an interest in property within the meaning of 11 U.S.C. § 548.

2. Whether reasonably equivalent value was received for the transfer.

3. Whether the Plaintiff is estopped from seeking or has waived his rights to seek to avoid the transfer due to his failure to redeem the property within the statutory redemption period, as extended by 11 U.S.C. § 108(b).

## CONCLUSIONS OF LAW

1. A foreclosure sale and issuance of a certificate of purchase is a transfer of an interest of the debtor in property within the meaning of 11 U.S.C. § 548.

2. Reasonably equivalent value was not received for the transfer.

3. The Plaintiff is not estopped from seeking to avoid the transfer, nor has he waived his right to do so, due to his failure to redeem the property.

## DISCUSSION

After the trial of this proceeding, this Court rendered its ruling in the case of *Christian v. Ryan*, 48 B.R. 833 (Bankr. Colo.1985), wherein it was held that a non-collusive, regularly conducted foreclosure sale and issuance of certificate of purchase is a transfer of an interest of the debtor in property, subject to avoidance under 11 U.S.C. § 548, assuming all other requirements for avoidance are met. That decision was rendered in a case filed after the effective date of P.L. 98–353, the Bankruptcy Amendments and Federal Judgeship Act of 1984, which amended the provisions of both 11 U.S.C. § 548 and the definition of "transfer", now found at 11 U.S.C. § 101(48). The case in question here was filed prior to the effective date of those amendments. This Court finds, however, that the amendments did not effectively alter the definition of "transfer" under 11 U.S.C. § 101 and the right to avoid a fraudulent transfer under 11 U.S.C. § 548. Therefore, the decision rendered in *Christian v. Ryan* will be applied to this proceeding, and the foreclosure sale and issuance of a certificate of purchase by the Public Trustee to Heritage was a transfer of an interest of the Debtors in property, subject to avoidance under 11 U.S.C. § 548.

In order to avoid a transfer, the trustee must establish that, under 11 U.S.C. § 548(a)(2)(A), the debtor received less than a reasonably equivalent value in exchange for the transfer, and, as asserted here, under 11 U.S.C. § 548(a)(2)(B)(i), the debtor was insolvent on the date such transfer was made. The parties have stipulated that the Debtors were insolvent on the date of the foreclosure sale. Therefore, this Court must determine whether the Debtors received reasonably equivalent value for the transfer.

The Bankruptcy Code nowhere defines the term "reasonably equivalent value." Consequently, courts have varied widely in their interpretation of its meaning. The Bankruptcy Appellate Panel of the Ninth Circuit held that the consideration received at a non-collusive and regularly conducted foreclosure sale is conclusively presumed to be reasonably equivalent value. *In re Madrid*, 21 B.R. 424, 427 (Bankr.App. 9th Cir.1982). The Fifth Circuit concluded that a sale price approximately 57.7 percent of the fair market value of the property was not a fair equivalent, and noted that it was unable to locate a decision approving a transfer for less than 70 percent of the fair market value, thereby creating the so-called *"Durrett* 70 percent rule." *Durrett v. Washington Nat. Ins. Co.*, 621 F.2d 201, 203 (5th Cir.1980). The Eighth Circuit rejected the *Madrid* rule, and found that the question of whether the sale price provided a reasonably equivalent value must be determined on a case by case basis, through an evidentiary hearing, and remanded the proceeding to the bankruptcy court to make such a determination. *In re Hulm*, 738 F.2d 323, 327 (8th Cir.1984).

This Court agrees with the Eighth Circuit's reasoning. The *Madrid* rule's conclusive presumption ignores the realities of foreclosure sales, for, typically,

> when no buyer appears at the sale, the lender normally sells to itself for the

amount of its unpaid loan. When a buyer appears, it is usually seeking to pay as little as possible. The lender is usually eager to jettison on the property for a price equalling its unpaid debt. Thus, in cases where another measure of value is available, the price obtained at foreclosure sale is weak evidence of value. *In re Richardson*, 23 B.R. 434, 446 (Bankr. Utah 1982).

Assuming that *Durrett* creates a 70 percent rule, that rule is also rejected. Reasonable equivalence must depend on the facts of each case. Relevant considerations include the fair market value of the property at the time of the sale, the nature of the property in question and its relative marketability, and the number of persons appearing and bidding at the foreclosure sale.

Most courts have placed the greatest weight on the disparity between the sale price and the fair market value of the property. Absent unusual circumstances, this will typically be the controlling consideration. The courts have varied in their relation of the sale price to the value of the property. A thorough discussion of these methods appears in *Richardson*, 23 Bankr. at 441–448. This Court finds that the valuation method proposed in *Richardson* most fairly reflects the value obtained by the debtor at the time of the transfer and its relation to the value of the property. *Richardson* holds that the court should compare the bid at foreclosure sale to the equity remaining in the property after subtracting the post-sale liens from the value of the property. In that case, the property was valued at $75,000, and was subject to outstanding liens remaining after the sale of $43,550.31, leaving the debtor with $31,449.69 worth of equity. Comparing the bid of $6,738.43, the pay-off on the bidder's note, to the post-sale equity, the Court concluded that reasonably equivalent value was not obtained. *Id.* at 441.

In this proceeding, the parties agree that the property is worth between $85,000 and $100,000, with $85,000 being liquidation value, and $100,000 being value given an extended period of time for sale. Were the Trustee to recover the property, the Trustee would be under no obligation to liquidate the property immediately. Rather, this Court has regularly held that a trustee is entitled to a reasonable period of time within which to market property. Therefore, this Court finds that, at the time of sale, the fair market value of the property was $100,000.

The sale price was $34,599.13, and the Deed of Trust foreclosed on was the first lien against the property. Under Colorado law, the foreclosure sale and issuance of trustee's deed cut off all junior liens on the property. 38–39–110, C.R.S. Therefore, under the *Richardson* rule the bid price of $34,599.13 should be compared to $100,000, which is the fair market value, less all post-sale liens, $0, equalling the full value of $100,000. The Court also notes that the only bidder at the foreclosure sale was Heritage, who bid in the balance due on the note plus foreclosure costs. The property in question is commercial, although it is located in a residential area. No facts were presented to this Court to indicate that any reason exists why this property is unmarketable, or is of limited marketability.

█ Consequently, this Court concludes that the disparity of $65,400.87 renders the sale price paid at the foreclosure sale not reasonably equivalent value, and that, therefore, the sale should be avoided.

█ Heritage contends that the Plaintiff is estopped from seeking to avoid this transfer, or has waived his right to avoid the transfer, by failing to redeem the property under Colorado law. This contention is unfounded. There is no provision in the Code making redemption the exclusive remedy of the trustee. In a typical situation, there may not be sufficient liquid assets in the estate to redeem the property. That does not mean that the trustee is estopped from avoiding a fraudulent transfer, assuming grounds can be established. For an estoppel to exist, there must be a misrepresentation of fact, intended to be relied upon and to mislead another party, and in fact relied upon by the other party to his

detriment. *In re Jackson,* 42 B.R. 76 (D.Colo.1984). No evidence indicates any misrepresentation by the Plaintiff regarding his intent to redeem the property or to avoid the transfer, whether by affirmative statement, silence, action or inaction. Nor is there any indication of any detrimental reliance by Heritage on any misrepresentation, if one exists. Therefore, there are no grounds for finding an estoppel.

■ Likewise, no grounds for finding a waiver exist. Waiver requires actual or constructive knowledge of the right, privilege or benefit being waived and intentional relinquishment of that right, privilege or benefit. *Matter of Garfinkle,* 672 F.2d 1340 (11th Cir.1982). Here, while the Plaintiff undoubtedly knew of his right to redeem the property and to seek an avoidance of a preferential transfer, there is no evidence that the Plaintiff intended to waive either of those rights. Once the right to redeem was lost by passage of time, he still retained the right to attempt to avoid the transfer. Therefore, this Court concludes that there was no waiver of the right to avoid a preferential transfer, nor was the Plaintiff estopped from doing so.

There are a number of issues remaining in this proceeding which this Court is unable to resolve at this time, due to the failure of Pinkston to join in the stipulation of facts, her failure to appear at trial, either in person or by a licensed attorney, and the lack of joinder of John Pinkston as a party defendant. Those issues include:

1. Whether John Pinkston should be joined as a party defendant.

2. Whether the Plaintiff can recover the property from either or both Pinkstons.

3. Whether the Plaintiff can obtain a money judgment against either the Pinkstons or Heritage for the difference in value of the property.

4. Whether either Heritage or the Pinkstons would be entitled to a lien on the property, assuming its return is ordered; or credit for the sale price paid, if a money judgment is obtained.

WHEREFORE, IT IS ORDERED that the parties are allowed until May 1, 1985, to file any appropriate amended pleadings to raise these and any other issues relevant to this proceeding. Trial on the merits shall be set for June 21, 1985, at 8:30 a.m.