**In re Jacob LAPP, Jr. and Louise K. Lapp, Debtors.**

**Bankruptcy No. 86 B 03490 J.**

United States Bankruptcy Court, D. Colorado.

Oct. 20, 1986.

Karen J. Radakovich, Denver, Colo., for debtors.

Harlan C. Stientjes, Stientjes and Shaddock, Greeley, Colo., for IntraWest Bank of Greeley.

Dahil D. Goss, Sp. Asst. U.S. Atty., Denver, Colo., for the U.S., acting through the Farmers Home Admin., U.S. Dept. of Agriculture.

## MEMORANDUM OPINION AND ORDER

ROLAND J. BRUMBAUGH, Bankruptcy Judge.

THIS MATTER came before the Court on the objections by Intrawest Bank of Greeley, N.A. and the Farmer's Home Administration to the confirmation of the debtors' Chapter 13 plan. A hearing was held on September 24, 1986. This Court recognizes jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157.

The Farmer's Home Administration asserts that the plan does not comply with 11 U.S.C. § 1322(b)(2) because it modifies the rights of the holder of a lien on property that is the debtors' principal residence. It also alleges that the plan fails to cure default in a reasonable time, or to provide adequately for the Administration's claim following its rejection of the plan. The Administration states that the plan does not provide for it to receive as much as it would receive under a Chapter 7, and contends the value of its security exceeds the

amount claimed in the plan. The Administration further claims that the debtors' proposal to surrender the bulk of their farm to the Administration, while retaining their residence, cannot work because there are junior judgment liens against the property. In addition, the Administration states that the debtors did not meet proper notice requirements.

Intrawest Bank of Greeley objects to the debtors' contention that its security interest extends only to one-half of the property listed as collateral. The Bank states that it will not receive, under the plan, property with present value not less than the value of the collateral. The Bank claims impairment under the plan, and asserts that the plan is not feasible.

The objection of the Farmer's Home Administration is easily resolved. The Administration failed to present competent evidence as to the value of the debtors' residence, upon which it holds a mortgage. No evidence was presented as to the value of irrigation equipment or water rights in which the Administration holds a security interest.

■ This Court recently held in *In re Hines*, 64 B.R. 684 (Bkrptcy.D.Colo.1986) that a creditor cannot claim exemption, under 11 U.S.C. § 1322(b)(2), from modification of its rights where it holds security which includes property in addition to the debtors' principal residence. In that case, the creditor held not only the debtor's residence, but the remainder of the debtor's farm. In the case at bar, the Farmer's Home Administration holds not only the debtors' principal residence, but also irrigation equipment, as security for its loan in the principal amount of $116,000.00. Therefore, it cannot object to the plan on the basis that the plan seeks to modify the rights of a lienholder on real property that is the debtors' principal residence.

■ The only competent evidence as to value of the debtors' residence shows the house and five acres as worth $25,000.00. The Farmers Home Administration therefore cannot contend that this property, to be retained by the debtors, has a value in excess of $25,000.00. The debtors will pay $2,255.00 per year under the plan, in addition to the property surrendered to the Administration. Therefore, the evidence shows the Administration will receive as much or more under the plan as it would in liquidation. Further, the 24–month cure period is reasonable, given the debtors' circumstances and financial abilities. *See, In re La Crue*, 33 B.R. 569 (Bankr.Colo.1983). The debtors also meet the requirements of 11 U.S.C. § 1325 because they are surrendering all property not covered by the homestead exemption, and will be making additional payments to the Administration. Finally, there is no evidence of junior judgment liens encumbering the property to be surrendered. Therefore, the objection of the Farmer's Home Administration must fail. The issue of the compliance with notice requirements will be rendered moot by the Court's direction to the debtors below.

The objection of Intrawest Bank raises more difficult questions. The Bank argues that the debtors should not be permitted to claim that the Bank's security interest covers only one-half of the value of the collateral. It points out that Mrs. Lapp signed a guaranty in 1970, and contends the guaranty operates to place any ownership interest Mrs. Lapp may have in the collateral under the security agreement signed by her husband.

It is clear that marital status alone is insufficient to prove an ownership interest in property. *In re Walsky*, 53 B.R. 751, 754 (Bankr.N.D.1985). It is possible for one spouse to own property separate and apart from the other. *Flavell v. Dept. of Welfare, City and County of Denver*, 144 Colo. 203, 355 P.2d 941 (1960). In order for Mrs. Lapp to prove joint ownership without a joint title, she must show that she is a partner in the business of farming, and so owns one-half of the partnership's assets. *In re Oetinger*, 49 B.R. 41 (Bankr.Kan. 1985). The mere fact that a wife participates in farming activity doesn't mean she is a partner; stronger indicia of partnership must be shown. *Matter of Ward*, 6 B.R. 93 (Bankr.Fla.1980).

In the case at bar, Mrs. Lapp testified that she participated in farm work and helped run the farm. She specifically stated that she assisted her husband in filing out the financial statements required by the Bank for each renewal of the loan, and attended each meeting where loan documents were signed. There is no evidence showing she engaged in work outside of the farm. Because of her extensive involvement "in management, decision-making, and daily activities of the farm," *Wolsky, supra* at 754, she may be considered a partner in the operation and entitled to joint ownership of partnership assets, including the property securing Intrawest Bank's debt.

However, principles of partnership law also indicate that each partner may act as an agent and bind the partnership, and that such an act may be ratified by the remaining partners if they do not repudiate it and accept its benefits. *In re Oetinger, supra,* at 43–44. Here, Mrs. Lapp never questioned or repudiated the security interest her husband gave on the partnership property. In addition, she, as a member of the farming partnership, received benefits from the money loaned by the Bank. She has ratified her husband's action, and cannot now claim that her one-half interest is unencumbered by the Bank's lien. Therefore, her assertion of joint ownership does not provide her with an unencumbered one-half interest in the collateral.

The Court recognizes that the debtors in this case may lack sophistication in dealing with financial and legal documents. Further, it is true that a guaranty agreement, such as the one signed by Mrs. Lapp, will be construed in favor of the guarantor, *Walter E. Heller & Co., Inc. v. Wilkerson,* 627 P.2d 773 (Colo.App.1980), and will not be extended by implication beyond the express terms of the instrument or the plain intent of the parties. *ARA Mfg. Co. v. Cohen,* 654 P.2d 857 (Colo.App.1982). However, there is no indication of duress or misrepresentation surrounding the guaranty, so it will be construed as what it is, a guaranty reflecting a separate promise by Mrs. Lapp to the Bank, although she jointly owned the collateral. *See, Continental Illinois National Bank v. Trust of Chicago v. Stanley,* 606 F.Supp 558 (D.C.Ill.1985); *Ford Motor Credit Co. v. Milburn,* 615 F.2d 892 (10th Cir.1980). Similarly, because there is no evidence of misrepresentation with an intent to mislead, Mrs. Lapp cannot claim that the Bank is equitably estopped from asserting its security interest as to her portion of the collateral. *In re Garrison,* 48 B.R. 837 (D.C.Colo.1985). The fact that Mrs. Lapp did not read the security agreements or the guaranty does not excuse her from being bound by their contents through her husband's agency and her own signature. *Clayton Brokerage Co. of St. Louis, Inc. v. Stansfield,* 582 F.Supp. 837 (D.C.Colo.1984). Only if misrepresentations were made will a court look beyond the signature to the question of what a reasonably prudent person would do. *Id.; See also, Atkinson v. Englewood State Bank,* 141 Colo. 436, 440, 348 P.2d 702 (1960).

For the above reasons, the Bank's objection must be sustained, and the debtors must submit an amended plan. It should be noted that the issue of lien avoidance under 11 U.S.C. § 522(f) is not before the Court. It is, therefore,

ORDERED that the objection of the Farmer's Home Administration is overruled. The objection of Intrawest Bank of Greeley is sustained, and the debtors are directed to submit, within fifteen (15) days of the entry of this order, an amended plan showing the Bank's security interest applying to both Mr. and Mrs. Lapp's interest in the collateral. Correct notice of the plan is to be given to all parties in interest. Each party shall bear its own costs as to these objections.