[No. 23811-3-III.   Division Three.   May 30, 2006.]

YAKIMA COUNTY LAW ENFORCEMENT OFFICERS GUILD, *Respondent*, v. YAKIMA COUNTY, *Appellant*.

*James M. Cline* and *Aaron D. Jeide* (of *Cline & Associates*), for appellant.

*Russell D. Hauge, Prosecuting Attorney*, and *Martin F. Muench, Deputy*, for respondent.

¶1 BROWN, J. — While Deputy Sheriff Jan Bartleson's disciplinary investigation was in progress, Yakima County Sheriff Ken Irwin discharged her on "fit for duty" grounds. Both Deputy Bartleson and the Yakima County Law Enforcement Officers Guild (Guild) grieved the discharge under the collective bargaining agreement (CBA), alleging she was fit for duty and her medical discharge was a pretext for Sheriff Irwin's disciplinary concerns. After the county declined to arbitrate, the Guild sued to compel arbitration. The court summarily interpreted the CBA to require arbitration but denied attorney fees for the Guild. The county and the Guild cross-appealed. We affirm, except for leaving the procedural attorney fee dispute to the arbitrator.

## FACTS

¶2 In November 2002, Deputy Bartleson unsuccessfully requested extended medical leave due to surgery. Next, she filed a later-dismissed sex-disability complaint with the Equal Employment Opportunity Commission (EEOC). Because the EEOC complaint partly alleged adult attention deficit disorder, Sheriff Irwin required Deputy Bartleson to undergo a "fit for duty" psychological evaluation. Clerk's Papers (CP) at 212. The evaluation determined Deputy Bartleson was fit for duty.

¶3 However, two months later during an internal disciplinary investigation based on conduct complaints, Sheriff Irwin placed Deputy Bartleson on administrative leave and again required her to undergo a "fit for duty" evaluation. Initially, the psychologist was undecided about Deputy Bartleson's fitness, but after reviewing her internal file and ongoing investigation reports supplied by the sheriff, the psychologist opined she was not fit for duty. Sheriff Irwin requested an investigatory interview with Deputy Bartleson. She responded with a physician's letter stating she should not participate in any internal interviews due to stress and indicating she should be given three months of unpaid medical leave from April 14, 2003 through July 14, 2003.

Sheriff Irwin granted the leave but notified Deputy Bartleson her employment would be terminated when the leave expired. Effective July 15, 2003, Deputy Bartleson was discharged.

¶4 On July 24, 2003, Deputy Bartleson filed and later withdrew a termination appeal with the local civil service commission, alleging CBA violations. Deputy Bartleson is not a party to this appeal. Sheriff Irwin reviewed her July grievance and found "no violation," indicating she did not have the right to arbitrate his decision. On August 9, 2003, the Guild also filed a grievance partly seeking back pay and reinstatement for Deputy Bartleson. The Guild alleged a nonexclusive list of violations, including the violation of CBA sections 18.1, 18.3, and 19.3. On January 20, 2004, the county denied the Guild's arbitration request.

¶5 The Guild then sued in Benton County to compel Yakima County to arbitrate under the CBA, partly claiming the fitness discharge was a pretext for a disciplinary termination. On cross motions for summary judgment, the court interpreted the CBA's arbitration provisions to require arbitration of the Guild's grievance but did not grant the Guild's attorney fee request. Both parties appealed.

ANALYSIS

¶6 The issue is whether the trial court erred in deciding the county was required to arbitrate the Guild's grievance as a matter of law.

¶7 Summary judgment is proper if "the pleadings, affidavits, depositions, and admissions on file demonstrate there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Folsom v. Burger King,* 135 Wn.2d 658, 663, 958 P.2d 301 (1998); CR 56(c). "[The] appellate court engages in the same inquiry as the trial court when reviewing an order for summary judgment." *Folsom,* 135 Wn.2d at 663. The facts and reasonable inferences from the facts are viewed in the light most favorable to the nonmoving party. *See Mountain Park Homeowners Ass'n v.*

*Tydings*, 125 Wn.2d 337, 341, 883 P.2d 1383 (1994). Our review is de novo. *Id.*

¶8 The arbitrability of labor disputes in Washington is controlled by federal law. *Local Union No. 77, Int'l Bhd. of Elec. Workers v. Pub. Utils. Dist. No. 1*, 40 Wn. App. 61, 63, 696 P.2d 1264 (1985). The key principles are found in the "Steelworkers' Trilogy": *United Steelworkers of America v. American Manufacturing Co.*, 363 U.S. 564, 80 S. Ct. 1343, 4 L. Ed. 2d 1403 (1960); *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S. Ct. 1347, 4 L. Ed. 2d 1409 (1960); and *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S. Ct. 1358, 4 L. Ed. 2d 1424 (1960).

¶9 "[I]t is the court's duty to determine whether the parties have agreed to arbitrate a particular dispute." *Council of County & City Employees v. Spokane County*, 32 Wn. App. 422, 424-25, 657 P.2d 1058 (1982). We do not examine the controversy merits but determine if the grievant has made a claim covered by the CBA. *Id.* We should order arbitration "unless it may be said with positive assurance the arbitration clause is not susceptible of *an* interpretation that covers the asserted dispute." *Id.* Doubts should be resolved in favor of arbitration. *Id.* All issues "upon which the parties disagree are presumed to be within the arbitration provisions unless negated expressly or by clear implication." *Id.*

¶10 Here, CBA sections 18.2 and 18.6 indicate disciplinary action, including discharge, is reviewed pursuant to article 19. Under section 19.4:

> An employee shall have the right to have a disciplinary action against him/her reviewed for just cause and severity of discipline pursuant to the provisions of this section as follows:
>
> A. Disciplinary action resulting in oral and/or written reprimand shall be reviewed through the grievance procedure set forth in Article 20.
>
> B. Disciplinary action resulting in suspension without pay, demotion, or discharge, shall be reviewed by the Yakima County Civil Service Commission.

CP at 158. Article 20 outlines the arbitration process.

¶11 These sections negate an arbitration right for disciplinary action resulting in discharge. Instead, disciplinary discharge is reviewed by the Yakima County Civil Service Commission. Even so, the Guild argues it has the right to arbitration under sections 20.2 and 20.3.

¶12 Under section 20.3: "Any employee who believes that he/she has a grievance arising out of the terms of this Agreement may personally, or through a representative, apply for relief under the provisions of this Article." CP at 159. Under section 20.2: "A grievance is defined as a dispute involving the interpretation, application or alleged violation of any provision of this Agreement." CP at 159.

¶13 The Guild's arguments partly focus on the county's interpretation and application of the "just cause" requirement for discharge under the CBA. As noted, just cause and discipline severity discharge issues are seemingly not subject to CBA arbitration. But, while section 19.4 negates the right to arbitrate discharge issues, sections 20.2 and 20.3 grant arbitration for disputes involving the interpretation and application of the CBA, such as the parties' dispute over the interpretation and application of the just cause and discharge provisions. Therefore, an inconsistency exists between section 19.4 on one hand and sections 20.2 and 20.3 on the other hand.

¶14 Given the contractual ambiguity, we cannot say "with positive assurance the arbitration clause is not susceptible of *an* interpretation that covers the asserted dispute." *Council of County & City Employees*, 32 Wn. App. at 425. Considering the strong presumption favoring arbitrability, we resolve this conflict in favor of arbitration. *See id.; see also AT&T Techs., Inc. v. Commc'n Workers of Am., Inc.*, 475 U.S. 643, 656-57, 106 S. Ct. 1415, 89 L. Ed. 2d 648 (1986) (presumptively favoring arbitration when examining similar broad arbitration clause); *Gen. Teamsters Local No. 231 v. Whatcom County*, 38 Wn. App. 715, 717, 687 P.2d 1154 (1984).

¶15 We do not analyze the Guild's substantive complaints arising from sections 20.2 and 20.3 because our focus is limited to deciding if the parties have agreed to arbitrate a particular dispute. *Council of County & City Employees*, 32 Wn. App. at 424-25. Finally, we acknowledge the Guild's due process contentions concerning section 19.3. While section 19.3 provides for notice and the opportunity to respond, it does not expressly incorporate the protections from *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 546, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985), into the CBA. Under our reasoning thus far, we need not reach the suggested constitutional issues.

¶16 The county contends the Guild's grievance is time barred. Under section 20.5, an employee must file a grievance within 30 days of its occurrence or the employee "waive[s] all rights and remedies under this Article relating to said grievance." CP at 159. Further, under section 20.4: "The parties agree that the time limitations provided are essential to the prompt and orderly resolution of any grievance and that each will abide by the time limitations, unless waived or extended by mutual agreement of the parties to the grievance." CP at 159. The Guild notes the time limits do not apply under section 20.6 if the CBA grievance affects more than one employee but essentially concedes it did not allege more than one employee is affected.

¶17 However, giving examples, the Guild argues the claim is nonetheless exempt from the time requirements based on past practices because the county has submitted to arbitration in the example situations. *See Meat Cutters Local No. 494 v. Rosauer's Super Mkts., Inc.*, 29 Wn. App. 150, 156, 627 P.2d 1330 (1981) ("[P]ast practices and bargaining history should be an implied part of the bargaining agreement. Both may be considered by the arbitrator in resolving a dispute.").

¶18 While the examples seem apt, questions of procedural arbitrability, those "concerning the procedural prerequisites to arbitration," should be resolved by an arbitra-

tor. *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 556-57, 84 S. Ct. 909, 11 L. Ed. 2d 898 (1964) (arbitrator decides if preliminary procedural steps completed in grievance procedure). " '[O]nce it is determined, [by a court] . . . , that the parties are obligated to submit the subject matter of a dispute to arbitration, "procedural" questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator.' " *Oil, Chem. & Atomic Workers' Int'l Union, Local 4-447 v. Chevron Chem. Co.*, 815 F.2d 338, 340 (5th Cir. 1987) (alterations in original) (quoting *John Wiley & Sons*, 376 U.S. at 557).

¶19 The arbitrator should decide "allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983). Essentially, these types of procedural issues "cannot ordinarily be answered without consideration of the merits of the dispute which is presented for arbitration." *John Wiley & Sons*, 376 U.S. at 557.

¶20 Justice White's dissent to the denial of certiorari for *United Steelworkers of America v. Cherokee Electric Cooperative*, 485 U.S. 1038, 108 S. Ct. 1601, 99 L. Ed. 2d 915 (1988), does not help the county. Justice White wrote in favor of accepting certiorari and reversing the trial court's denial of the right to arbitrate based on the untimeliness of the grievance. *Id.* at 1039. Justice White recognized *John Wiley & Sons* and its progeny require "the arbitrator resolve all procedural objections to arbitration so long as the subject matter of the grievance is covered by an arbitration agreement." *Id.* (citations omitted). Considering all, we leave the CBA time limit arguments for the arbitrator's decision.

¶21 In sum, the trial court did not err in requiring arbitration. Consequently, we leave the remaining procedural questions to the arbitrator, including the Guild's entitlement to attorney fees, if any, under its cross-appeal theory. We note the Guild fails to persuade us the county has acted in bad faith or vexatiously in this appeal. The

delays here are supported by declarations and appear routine.

¶22 Affirmed.

SWEENEY, C.J., and KATO, J., concur.